[L. A. No. 16529. In Bank.—June 27, 1939.]

In the Matter of the Estate of ELIZABETH RATTRAY, Deceased. Honorable MATTHEW MURPHY, Consul of the Irish Free State, etc., Appellants, v. MARY ANN RENNIE et al., Respondents.

John B. Ehlen, Lloyd R. Massey and Ralph Edgington for Appellants.

James F. Peck, Oliver Ellsworth and Chas. C. Boynton, as *Amici Curiae,* on Behalf of Appellants.

Louis Thomsen and Duque & McKinley for Respondents.

CURTIS, J.—This is an appeal from an order of partial distribution made and entered in the estate of Elizabeth Rattray, deceased. The contest is between the relatives of said Elizabeth Rattray and relatives of James Rattray, the predeceased husband of the said Elizabeth Rattray. By said decree of distribution, certain property in the estate of Elizabeth Rattray, deceased, was distributed in equal shares, that is to say, one-half thereof was distributed to relatives of Elizabeth Rattray, and one-half thereof to the relatives of James Rattray. The relatives of Elizabeth Rattray entitled to share in her estate are a brother and sister and the several children of a predeceased sister and two predeceased brothers. They have appealed from said order of partial distribution, and will be referred to herein as the appellants. The relatives of James Rattray, seeking to share in the distribution of the estate of Elizabeth Rattray by virtue of their relation-

ship to her predeceased husband, are the brothers and sister of James Rattray, deceased, and will be referred to herein as respondents. The deceased, Elizabeth Rattray, will hereafter be referred to as the decedent.

The estate of Elizabeth Rattray consisted of cash in the amount of $26,890.67, some stock of little or no value, and a parcel of real estate of little value. This property, for the sake of this discussion, may be divided into two classifications: (1) Community property which came to the decedent, Elizabeth Rattray, upon the death of her husband. Said property had been devised and bequeathed to her by the last will and testament of her husband and had been inventoried and accounted for as part of his estate. (2) Property owned by decedent at her death which had not been included in the inventory of the husband's estate.

At the outset it was readily admitted by appellants that as to that portion of the estate of decedent in the first classification, that is to say, the property which had formerly been the community property of the spouses and which had come to the decedent upon the death of her husband, having been devised and bequeathed to her in his last will and testament, the respondents are entitled under the provisions of section 228 of the Probate Code to share equally with them by virtue of respondents' relationship to James Rattray, the predeceased spouse of decedent. However, as to that portion of the estate of decedent which had not been included in the inventory of the estate of her predeceased husband, and which amounted to the sum of $18,307.03, appellants object to respondents' receiving any part thereof, contending that such property was the separate property of the decedent, that as to such property section 228 of the Probate Code has no application, and they, as the sole heirs of decedent, are entitled to receive the whole thereof.

The trial court found, and made its order of distribution accordingly, that "all of the estate of Elizabeth Rattray, deceased, was community property of said decedent and her said previously deceased spouse, James Rattray, and came to Elizabeth Rattray, from James Rattray, by gift, devise and bequest", and that said respondents "constitute heirs of the within decedent under the provisions of section 228 of the Probate Code of the State of California, and are en-

titled to succeed to one-half of the estate of Elizabeth Rattray.''

■ It is at once apparent that the order of distribution of the property in the first classification by the trial court was based upon the finding that the property was the community property of the spouses which had come to Elizabeth Rattray from her predeceased husband ''by devise and bequest''. There is no question as to the correctness of the order of distribution in so far as it relates to this property. As to the second classification of property, the order of distribution, it is apparent, was based upon the finding that the property was the community property of the spouses which had come to Elizabeth Rattray ''by gift''. The correctness of the conclusion of the trial court that respondents as relatives of the predeceased spouse were entitled to share in the distribution of this property depends upon the answer to two questions: Was the finding of the trial court that the property was the community property of the spouses which had come to the decedent by gift from her husband supported by the evidence? Do the provisions of section 228 of the Probate Code control the distribution of the property of a decedent dying intestate without issue who acquired said property as an *inter vivos* gift of community property from a predeceased spouse?

We are satisfied that the answer to both questions is in the affirmative and consequently the order of distribution of the trial court with reference to this property is correct.

■ With reference to the money claimed by appellants to have been the separate property of the decedent, proof was offered to the probate court by appellants that at the time of the death of decedent's husband in 1930, decedent had on deposit with a bank in her own name, as shown by her bank books, the sum of $16,618.90. A property search report by a title company was also introduced by appellants which tended to show that decedent during her married life, had held title in her own name to several parcels of real estate. Aside from the fact of title being held by her as her separate property, no evidence was produced to explain the source of the funds by which the property was acquired by her as her separate property. If no evidence of probative value was offered by respondents in proof of the fact that the source of this property was the community prop-

erty of the spouses, respondents would necessarily fail to establish their right to inherit by virtue of their relationship to the predeceased spouse of decedent. Since their right to inherit depended not merely upon the fact of that certain relationship, but upon the fact of such relationship plus the fact that the property claimed by them as heirs had formerly been the community property of the decedent and her predeceased spouse, the burden of showing such additional fact rested upon them. (*Estate of Simonton*, 183 Cal. 53 [190 Pac. 442].)

The sole evidence available upon this question, and produced by respondents, was the testimony of William Rattray, a brother of the predeceased spouse. Undoubtedly the trial court, in accepting as true the testimony of said witness, had in mind his interest in the outcome, and in weighing his evidence, gave due weight to this factor. We are of the opinion that this testimony was sufficiently substantial to support the finding of the trial court with reference to the community character of this property, and the necessary inference therefrom that since all of the property had been the community property of the spouses, and the wife had no other source of income, this property of the wife had come to her as an *inter vivos* gift from her husband. Briefly summarized, the testimony of William Rattray was to the effect that he first met decedent two years after her marriage in 1908 to his brother, James Rattray, and that he stayed with them for some little time; and then saw them at intervals for several years; that quite often he had discussions with them relative to their financial affairs; that at the time of the marriage his brother had no property; that his sister-in-law had no property at the time of their marriage; that after their marriage she was a housewife for her husband; that shortly after the marriage his brother started to work for the Los Angeles Water Company and worked for that company for approximately twenty years; that he worked up to the position of foreman in which position he earned $200 a month; that his brother was ill for about a year prior to his death in 1930 and left the employment of the company; that his brother had never inherited anything from anybody and that he had never heard from his sister-in-law or anyone else that she had ever inherited any; that she did nothing to earn her livelihood after her husband's death but con-

tinued to be a housewife; that at the time of the husband's death they owned one piece of real property, and at different times had sold three other parcels of property; and that they were very frugal in their manner of living. This testimony, although uncorroborated, was likewise uncontradicted by any fact or circumstance which would support in the slightest degree any inference that the source of the property was not community property of the spouses. The property acquired by them totaled an amount commensurate with the income of the husband and their manner of living. The trial court was justified, therefore, in concluding that all of the property of the spouses, including the amount on deposit in the bank in the wife's name, was acquired by their joint efforts and from the frugality of the spouses during their twenty-two years of married life.

With reference to the sum of $1688.13, acquired by decedent from some unexplained source, and which goes to make up the total of $18,307.03, claimed by appellants as a part of decedent's estate wholly distributable to them, since the wife engaged in no gainful occupation subsequent to the death of her husband, this money may reasonably be traced as interest upon her bank deposits, and as such fruit of community property, must likewise be deemed to be community property. The contention of appellants therefore, that the evidence does not support the finding of the trial court to the effect that all the property in the estate of the decedent was the community property of the spouses, and that a portion thereof came to the decedent by gift from her predeceased husband, cannot be sustained.

A more difficult problem is presented with reference to the question of whether or not the provisions of section 228 of the Probate Code control the distribution of property of a decedent dying intestate without issue who acquired said property as an *inter vivos* gift of community property from a predeceased spouse.

Appellants contend that the first paragraph of subdivision 8 of section 1386 of the Civil Code (which upon the adoption of the Probate Code by the legislature in 1931 was reenacted as section 228 of the Probate Code) has been construed as applying only to the community property of the spouses received by the surviving spouse "by will or inheritance or retained by virtue of its character as community

property'', and as having no application to community property which had come to the decedent during the lifetime of the spouses as an *inter vivos* gift from the predeceased spouse, and hence section 228 of the Probate Code must necessarily receive the same construction. (*Estate of McCauley*, 138 Cal. 546 [71 Pac. 458]; *Estate of Simonton*, *supra*.) It cannot be gainsaid that there is a great deal of force in this argument.

Respondents contend that section 228 of the Probate Code and section 229 of the Probate Code should be construed together, as were the two paragraphs of subdivision 8 of section 1386 of the Civil Code upon which the above sections of the Probate Code were based, and as so construed, by an enlargement of the scope of section 229, the scope of section 228 has likewise been enlarged to include the community property of the spouses which came to the decedent by an *inter vivos* gift from the predeceased spouse.

We are of the opinion that a study of the history of these two sections since the original enactment of subdivision 8 (mistakenly numbered subdivision 9) of section 1386 of the Civil Code in 1880, and an understanding of the obvious purpose behind the enactment of these two provisions, controlling, in the absence of issue or testamentary disposition, the descent and distribution of property of a decedent which had been either the community property of the spouses or the separate property of a predeceased spouse, compels the conclusion that section 228 and section 229 of the Probate Code should be read and construed together.

At the time of its enactment in 1880, subdivision 9 of section 1386 of the Civil Code (later renumbered correctly, subdivision 8) read as follows: ''If the decedent be a widow or widower, and leave no kindred, and the estate, or any portion thereof, was common property of such decedent, and his or her deceased spouse, while such spouse was living, such common property shall go to the father of such deceased spouse, or if he be dead, to the mother. If there be no father nor mother, then such property shall go to the brothers and sisters of such deceased spouse, in equal shares, and to the lawful issue of any deceased brothers or sisters of such deceased spouse, by right of representation.'' In other words, this subdivision was a mere last resort to prevent property escheating to the state in the event the decedent

left no kindred. (See Article, Rules of Descent under Probate Code sections 228 and 229, by W. W. Ferrier, Jr., in 25 California Law Review, p. 261.) (Apparently by an oversight issue of the predeceased spouse by a former marriage were not included among the designated relatives entitled to inherit.) Under the section as it then read, the question of the scope of said provision relative to community property was first presented in 1903 for determination. The court in *Estate of McCauley, supra,* held that the community property referred to in subdivision 9 of section 1386 of the Civil Code as distributable to the relatives of a predeceased spouse of a decedent leaving no kindred, must have been property which came to the decedent on the death of the predeceased spouse and that said section had no applicability to the property which had been the community property of the spouses and had come to the decedent as a gift from such predeceased spouse. In that case a widow who had received the bulk of her estate as an *inter vivos* gift from her husband died *testate* leaving no kindred. She bequeathed to nine individuals and five charitable corporations a money legacy. The legatees, other than the charitable corporations, sought to have the legacies to said corporations reduced to one-third of the distributable estate by reason of the provisions of section 1313 of the Civil Code which provided that charitable corporations could not take devises or bequests by will which should collectively exceed one-third of the estate of the testator leaving ''legal heirs''. Appellants argued that two nieces of the predeceased husband of decedent (not mentioned in decedent's will) were ''legal heirs'' of the decedent by virtue of subdivision 9 of section 1386 of the Civil Code, and that if any of decedent's property of which she died seised had been common property at any time before the death of her spouse, it must be regarded as community property regardless of any gift to her by her husband in his lifetime, and as her husband left legal heirs, and she left no kindred, such property must be taken into account in determining the ''one-third of the estate of the testator leaving legal heirs (Section 1313, Civil Code)''. The court was impressed by the fact that such a construction would greatly circumscribe the right of the wife of absolute testamentary disposition, if she left no kindred, and held that the nieces of the predeceased husband were

legal heirs of the decedent with reference only to the common property "which remained undisposed of" by the predeceased husband at his death. It is quite apparent that the term, "common property of such decedent and her deceased spouse, while such spouse was living" as set forth in subdivision 9 of section 1386 of the Civil Code, could reasonably have been interpreted to include all property in the estate of decedent which had ever been the community property of the spouses. There can be little doubt that the particular factual situation presented by that case was largely responsible for the narrow limitation placed upon the scope of the term "common property of the decedent and a predeceased spouse, while such spouse was living" in that case. Thereafter in 1905, the subdivision was renumbered 8 and enlarged to apply not only to community property of the decedent and the predeceased spouse, but to include property which had been the separate property of the predeceased spouse. It also corrected the apparent oversight with reference to the issue of the predeceased spouse, for by said amendment, said issue were included and given preference over the other designated relatives. A further and most material change was made at this time which transformed the subdivision from a provision to prevent escheat to the state to a provision setting up a wholly new rule of descent. This was accomplished by substituting the word, "issue" in the place of the word, "kindred", so that the section instead of applying only in the event the decedent left no *kindred* applied whenever the decedent died intestate leaving no *issue*. The subdivision as then enacted read as follows: "If the decedent is a widow or widower, and leave no issue, and the estate or any portion thereof was common property of such decedent and his or her deceased spouse, while such spouse was living, or was separate property of his or her deceased spouse, while such spouse was living, such property goes to the children of such deceased spouse and the descendants thereof, and if none, then to the father of such deceased spouse, or if he is dead, to the mother. If there is no father nor mother, then such property goes to the brothers and sisters of such deceased spouse, in equal shares, and to the lawful issue of any deceased brother or sister of such deceased spouse by right of representation." It will be noted that this provision actually took all the property which had been com-

munity property of the decedent and a predeceased spouse away from such close relatives of the decedent as his own parents, brothers, and sisters, and gave it to the same relatives of the predeceased spouse. This only lasted until the next legislature in 1907, when it was amended to provide for an equal division between certain designated relatives of the decedent and of the predeceased spouse of that property which had previously been the community property of the two spouses. At this time, the subdivision was divided into two paragraphs. The first paragraph was concerned with the community property of the spouses and contained no reference as to the manner of acquisition of the property by the surviving spouse. The second paragraph was concerned with property which had been the separate property of the predeceased spouse and contained the provision (possibly to conform to the judicial construction with reference to community property) that it applied to separate property of the deceased spouse which had come to the decedent ''by descent, devise or bequest''. In 1920, in *Estate of Simonton, supra,* upon a final distribution of the estate of a widow, who, after making certain specific bequests, had left the residue of her estate to her ''heirs at law as provided by the laws of succession of the state of California'', a contest arose between the next of kin of decedent and the descendants of her predeceased husband. Issue was made as to what property had been formerly community property and should go to the descendants of the predeceased husband and what property was not of this character and should, therefore, go to the decedent's branch of the family. The court, following and relying upon the decision in *Estate of McCauley, supra,* held that subdivision 8 of section 1386 of the Civil Code applied only to property received by will or inheritance or retained by virtue of its community character. In arriving at this conclusion, the court in addition to relying on *Estate of McCauley, supra,* justified its decision by calling attention to the fact that the language of the second paragraph of the subdivision which dealt with property which was the separate property of the predeceased spouse, contained specific language as to how the property must come to decedent in order for the provision to apply, namely, ''by descent, devise or bequest''. The court argued that an equivalent provision in the case of

712

community property would be one limited to property received or retained by the survivor of the community either by will or by inheritance or by virtue of its character as community property, and that as there was a fair presumption that the two provisions were intended to be equivalent, the provision relative to community property should receive a construction similar to that required by the plain language of the equivalent section referring to separate property. In 1930, the phrase, "if the deceased was a widow or a widower" was interpreted by this court in *Estate of Mc-Arthur*, 210 Cal. 439 [292 Pac. 469, 72 A. L. R. 1318], to include a person who had remarried after the death of a former spouse and had died leaving the second spouse surviving. The next year the legislature enacted in its entirety the Probate Code which had been prepared and proposed by the code commission, appointed pursuant to chapter 750, Statutes of 1929, to enter upon a revision, compilation and codification of the laws of the state. The first paragraph of subdivision 8 of section 1386 of the Civil Code was reenacted in almost identical language as section 228 of the Probate Code with the exception that the words, "If the deceased is a widow, or widower" were deleted as being meaningless since the decision in the *Estate of McArthur, supra*, and the words, "was common property of such decedent and his or her deceased spouse, while such spouse was living", was changed to, "was the community property of the decedent and a previously deceased spouse". The second paragraph of said subdivision 8 of section 1386 of the Civil Code was reenacted as section 229 of the Probate Code, but the word, "gift" was added to the phrase, "descent, devise, or bequest" in order, as stated by the code commission, "to make the section logically complete". Obviously, the addition of the word, "gift" enlarged considerably the scope of this provision. The two code sections as they now exist, and as they existed at the time of the death of the decedent read as follows:

"Section 228. No issue: Community property. If the decedent leave no issue, and the estate or any portion thereof was community property of the decedent and a previously deceased spouse, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then one-half of such

community property goes to the parents of the decedent in
equal shares or if either is dead to the survivor, or if both
are dead in equal shares to the brothers and sisters of the
decedent and to their descendants by right of representation,
and the other half goes to the parents of the deceased spouse
in equal shares, or if either is dead to the survivor, or if
both are dead in equal shares to the brothers and sisters
of such deceased spouse and to their descendants by right
of representation.''

''Section 229. No issue: Separate property of deceased
spouse. If the decedent leaves no issue, and the estate or
any portion thereof was separate property of a previously
deceased spouse, and came to the decedent from such spouse
by gift, descent, devise or bequest, such property goes in
equal shares to the children of the deceased spouse and to
their descendants by right of representation, and if none,
then to the parents of the deceased spouse in equal shares, or
if either is dead to the survivor, or if both are dead in equal
shares to the brothers and sisters of the deceased spouse and
to their descendants by right of representation.''

It is apparent from the history of these code provisions
and the various changes therein that ever since the amend-
ment in 1905, wherein the origin or source of the property
was first set up as one of the determining factors in the
descent and distribution of the estate of a decedent dying
intestate without issue, that there has been a consistent at-
tempt to work out a reasonable, consistent scheme of dis-
tribution wherein upon the death of a decedent intestate
without issue, instead of the whole property going to the
relatives of the last surviving spouse, the property should
go back to the relatives of the spouse from which title was
derived. The scheme in general, as was fair and reason-
able, provided that the separate property of a predeceased
spouse should go back in its entirety to the relatives of said
predeceased spouse, and that the community property of the
spouses should be shared equally by the relatives of the pre-
deceased spouse and the relatives of the surviving spouse
since both spouses are deemed to have contributed equally
to its acquisition. (*Estate of Brady,* 171 Cal. 1 [151 Pac.
275] ; *Estate of McArthur, supra; Estate of Putnam,* 219
Cal. 608 [28 Pac. (2d) 27].) It will be noted that the
provisions relative to the separate property of the prede-

ceased spouse and relative to the community property of the spouses were contained in one subdivision of one section of the code (subd. 8 of sec. 1386, Civ. Code) and were intended to furnish one general plan of distribution based upon the same underlying fundamental principle, that the origin or source of the property should determine its distribution. As before noted, in *Estate of Simonton, supra,* the court in arriving at its conclusion with reference to the community property of the spouses based, in part, its reasoning upon the phraseology of the paragraph of the subdivision relating to the separate property of the predeceased spouse, saying, "There is a fair presumption that upon this point the provisions with regard to community and separate property were intended to be equivalent, for no reason for a difference exists".

Logically, therefore, it seems that the only correct conclusion is that the two sections should be construed together. If they are construed together, a consistent scheme of distribution is provided. If they are construed separately an inconsistent scheme of distribution is provided for separate and community property which is not based upon reason or justice and has no relation to the obvious purpose which motivated the enactment of said provisions. If the sections are not construed together the result will be that the separate property of a predeceased spouse which has by *inter vivos* gift been converted into the separate property of the other spouse will go in its entirety to the relatives of the predeceased spouse, but the community property which has been converted by the predeceased spouse by *inter vivos* gift into the separate property of the other spouse will go wholly to the relatives of the decedent to the entire exclusion of the relatives of the predeceased spouse. In other words, the rational basis of the system of distribution is destroyed and a mere, arbitrary, inconsistent rule of succession substituted.

While the code commissioners disclaimed any purpose of making any substantial changes in the law as it existed prior to the proposed Probate Code, they did make a far-reaching change by the addition of the word, "gift" to section 229 "to make it logically complete". It would seem self-contradictory to suppose that in adding the word, "gift" to section 229, which has application to separate property

"to make the section logically complete" they intentionally planned to destroy the harmony and consistency of the rule of distribution which had theretofore applied alike to separate and community property. In view of the fact that the two sections had theretofore been construed as being mutually dependent on each other, it seems more reasonable to conclude that the code commissioners in proposing the enactment of the two sections of the Probate Code, and the legislature in enacting them, intended that these provisions should in the future, as they had in the past, be construed as inter-related and mutually dependent upon each other and furnishing by this means a consistent scheme of distribution of property falling within the purview of these provisions.

Appellants argue that more solicitude should be exercised in providing that separate property should go to the relatives of the predeceased spouse than should be exercised in providing that the relatives of the predeceased spouse should share in the community property of the spouses, but we are unable to perceive any logical basis of such distinction between the two classes of property with reference to the rights of succession under the circumstances which entitle the designated relatives in either event to inherit. And any argument based upon a claim that there is any real basis of distinction between the two classes of property must, we think, be held to be untenable.

It is true that in the case of *Estate of Miller*, 23 Cal. App. (2d) 16, 18 [71 Pac. (2d) 1117], in which a hearing was denied by this court, it was held that where the membership fees and dues in the Widows' and Orphans' Aid Association had been paid for out of community funds of a husband and wife, and the constitution of the association provided that the widow should be paid the sum of $2,500 if no person had been designated by the insured as beneficiary, and no beneficiary had been so designated, proceeds of the policy were properly payable to the administrator of the wife's estate (she having died within two weeks of his decease) upon the theory that the payment of the membership fees and dues was an inchoate gift by the husband of community property which became complete upon his death, and that section 228 of the Probate Code did not apply to this community property which the husband by gift had converted

into his wife's separate property. While it is true that this is a construction of section 228 of the Probate Code subsequent to its enactment in 1931, and the decision therein is necessarily predicated upon the conclusion that section 228 does not apply to community property of spouses which by *inter vivos* gift has become the separate property of the surviving spouse, it is apparent from the record in that case that the efforts of counsel for the heirs of the predeceased husband were directed primarily to convincing the court that the property had not become the separate property of the wife by gift, but had remained community property which came to her upon the death of her husband by virtue of its community character. However, upon more careful analysis of the two sections of the Probate Code, section 228 and section 229, we are convinced that the holding in that case was in error. In *Estate of Lissner*, 27 Cal. App. (2d) 570 [81 Pac. (2d) 448], the court followed the ruling in *Estate of Miller, supra,* with reference to a part of the property in controversy which consisted of the proceeds of a life insurance policy in which the wife had been named as beneficiary. At the oral argument it was conceded by respondents that appellants were entitled to succeed to such proceeds in accordance with the holding in the *Estate of Miller, supra,* and the court so held. In the petition for a hearing to this court, this holding was not mentioned nor questioned. While it is to be regretted that a hearing was not granted by this court of the petition in *Estate of Miller, supra,* we do not believe that our failure to grant it, should preclude us from arriving at what we consider a correct conclusion when the matter is directly presented to us in the instant case.

As we read section 228 of the Probate Code it provides that that portion of the estate of a decedent who dies intestate without issue, which has been the community property of said decedent and a predeceased spouse, which has come to said decedent by gift, devise, descent or bequest from such predeceased spouse, or belonged or went to the decedent by virtue of its community character on the death of such predeceased spouse, goes in equal shares to the relatives of the predeceased spouse and the relatives of the decedent designated in said section.

The order of the trial court being in conformance with said construction of section 228 of the Probate Code is affirmed.

Shenk, J., Waste, C. J., Houser, J., and Seawell, J., concurred.

EDMONDS, J., Dissenting.—I cannot agree with the construction placed upon section 228 of the Probate Code by the decision in this case. In my opinion, it is not in harmony with either the letter or the spirit of the law.

As early as 1880 the legislature of California provided that if a widow or widower died intestate leaving no kindred, any portion of his or her estate which was common property of such decedent and a deceased spouse, while such spouse was living, should go to the heirs of the predeceased spouse. (Sec. 1386, Civ. Code.) Undoubtedly, the legislative purpose of this enactment was to allow the relatives of the one whose death terminated the community to inherit the property accumulated by the spouses rather than to have it escheat to the state.

Not until 1903 was this court called upon to determine the meaning of the section. At that time, the appellants in *Estate of McCauley*, 138 Cal. 546 [71 Pac. 458], contended that if any of the decedent's cash and real estate was common property at any time before the death of her spouse, it must be distributed as required by the statute. Under that construction community property which Mr. McCauley had given to his wife before his death would pass to his heirs. However, the court adopted "the more reasonable construction", construing the words "while such spouse was living" to mean "that the common property referred to must be such as remains undisposed of by such spouse at his or her death." The statute cannot mean, said the court, that if that portion of an estate in controversy "happened to be at some time 'common property of such decedent and his or her deceased spouse', but had, long before the death of such spouse been conveyed by him or her to decedent, that in case of decedent's intestacy the property would go to the deceased spouse's heirs".

This decision definitely and positively established the rule that the statute as then in effect did not include community property which had been the subject of an *inter vivos* gift.

Seventeen years later and after the legislature had amended the code section by adding a rule of succession for any portion of an estate which was separate property of a deceased spouse, while living, ''and came to such decedent from such spouse by descent, devise or bequest'', the same question again came before the court and it followed the former case. In construing the provision defining the community property which could be succeeded to under the circumstances mentioned in the statute, it said: ''Literally, this would include any property which had once been community property, no matter if it were not such at the time of the husband's death, as, for example, when the husband had in his lifetime given it to his wife for her separate property. But such a meaning is clearly not what was intended, and it has already been held that it is not the true meaning.'' (*Estate of Simonton*, 183 Cal. 53, 57 [190 Pac. 442].)

Here is a second positive and definite pronouncement of the court, based upon the reasoning of the former decision. But as another ground for its conclusions, the court considered provisions concerning separate property which were not a part of the statute when the McCauley case was decided. Because, said the court, the legislature provided that separate property which came to the decedent, the surviving spouse, by descent, devise or bequest shall go to the latter's relatives, ''there is a fair presumption that upon this point the provisions with regard to community and separate property were intended to be equivalent, for no reason for a difference exists''.

However, the statute concerning community property was enacted in 1880 and its meaning had been construed at a time when separate property was not included in it and there was, of course, no specification concerning the manner in which a surviving spouse succeeded to separate property. Therefore, the provisions of the statute concerning separate property, added many years after the decision which construed the original statute, could not properly have been referred to for the purpose of ascertaining the legislative intent in regard to community property. In *Estate of McCauley, supra,* where the statute first came before the court, its interpretation of the words ''common property of such decedent, and his or her deceased spouse, while such spouse was living'', was reached upon a consideration of their mean-

ing in the light of the purpose of the statute in which they were used and in consonance with fundamental principles of statutory construction.

The true situation then after the legislature added the provision concerning separate property, was as follows: By judicial construction of the code section, the community property which passed under its provisions was that which was such at the time of the death of the predeceased spouse and did not include any which had been the subject of an *inter vivos* gift; by its express terms the separate property was that which had come to the decedent by "descent, devise or bequest".

In 1931, when the Probate Code was adopted, that part of section 1386 of the Civil Code relating to community property became section 228 of the new code; the portion concerning separate property was enacted as the following section. In rewriting the former statute, in addition to some slight textual changes the word "gift" was added to section 229 so that the separate property which may be claimed under it by succession now includes that which came to the decedent by "gift, descent, devise or bequest". But substantially the same words construed in *Estate of McCauley, supra,* and *Estate of Simonton, supra,* have been continued through all the revisions of the section, and in considering the application of section 228 of the Probate Code, the same statute which is now in question, to community property taken in the name of a husband and wife as joint tenants, this court again followed the rule of the earlier decisions. (*In re Kessler,* 217 Cal. 32 [17 Pac. (2d) 117].) It held that under the joint tenancy the interest of each spouse was separate property and that the wife succeeded to the husband's separate interest by right of survivorship; hence "upon her death her heirs alone were entitled to share therein".

In three cases then, dating from 1903, the statute in its different forms has been considered by the Supreme Court and the same construction placed upon it by each decision. Also, they have recently been followed by the District Court of Appeal in *Estate of Miller,* 23 Cal. App. (2d) 16 [71 Pac. (2d) 1117], wherein it was held that "section 228 of the Probate Code is not applicable to community property which the husband, by gift, has converted into his wife's separate property".

The present decision holds that because the legislature wrote the word "gift" into the statute concerning separate property, this court must write the same word into the law relating to community property. In my judgment this violates all rules of statutory construction and is entirely illogical.

At the time the Probate Code was adopted, the rule stated in the McCauley case had stood for 28 years as the law of California. There are many reasons why community property which has been the subject of an *inter vivos* gift should not be included among that which passes under the statute of succession; those reasons do not apply to separate property. This was alluded to in *Estate of Simonton, supra,* where the court said that to construe the statute concerning community property as including a gift of it would "place the relatives of a predeceased spouse in a more favorable position with regard to community property than with regard to such spouse's separate property, when, if any distinction were to be made, it would naturally be just the contrary".

The legislation here considered represents the old common law rule as to the descent of ancestral property, which allowed only those of the blood of the first purchaser by whom the land was brought into the family to inherit it. However, at common law and in states which have recognized the doctrine of ancestral estates, a sale or exchange of land extinguishes its ancestral character. Also, the doctrine has not generally been applied to personal property.

To construe section 228 of the Probate Code as including property which has been the subject of an *inter vivos* gift is directly contrary to the principles upon which the doctrine of community property rests. Since 1927, the law has expressly provided that "the respective interests of the husband and wife in community property during continuance of the marriage relations are present, existing and equal". (Sec. 161a, Civ. Code.) Community property is that which has been acquired after marriage by either husband or wife or both, except that acquired by gift, bequest, devise, or descent, and is frequently the result of the labors of each. Therefore, in consonance with principles of natural justice, not only is the wife's interest in the community property recognized as being "present, existing and equal", but since the early years of the state either husband or wife could make a gift of his or her interest in it to the other, and there-

after it was the separate property of the donee. In other words, a husband in recognition of the efforts of his wife in accumulating their community property, or for any other reason, may make a valid gift of it to her and from the date of that gift it becomes her separate property. Yet by the present decision, the same property, upon her death, must be considered to be community property.

There is still another reason why, in my opinion, the construction stated by the present decision is incorrect. Although the code commission in its report to the Governor and the legislature submitting the proposed Probate Code called attention to material changes in the law of succession which would follow its enactment, there is no suggestion that it would result in a different construction of the language relating to community property from that laid down in *Estate of McCauley, supra.* It, therefore, seems reasonable that neither the commission nor the legislature intended to include in the term community property as used in section 228, any which had become the separate property of one of the spouses by gift during the marriage relation.

For these reasons I believe that the decree of distribution should be reversed.

Rehearing denied. Edmonds, J., voted for a rehearing.