[Civ. No. 16922.   First Dist., Div. Two.   June 19, 1956.]

Estate of GRACE R. ANDERSON, Deceased.   DANIEL HARTWELL SHATTUCK et al., Appellants, v. CROCKER FIRST NATIONAL BANK, as Executor, etc., et al., Respondents.

Elkins & Wright for Appellants.

Peart, Baraty & Hassard, Joseph S. Rogers, Peter S. Sommer and Ronald P. Klein for Respondents.

DOOLING, J.—This appeal by the heirs of the decedent, Grace R. Anderson, is taken from so much of the order and decree of the probate court as determined that one-third of the residue of her estate, as to which she died intestate, was all, with the exception of the proportionate share of $4,239, which she received as executrix' fees in the probate of her predeceased husband's estate, the proceeds from community property of the decedent and said predeceased husband. The court accordingly determined that under Probate Code, section 228, the heirs of the predeceased husband were entitled to distribution of one-half of the property so determined to be community property.

■ The burden is on the heirs of a predeceased spouse seeking to inherit through the estate of the surviving spouse under Probate Code, section 228, to establish that the property was the community property of the spouses and, where the identical property is not found in the estate of the surviving spouse, to prove that specific property in that estate is the proceeds of such community property. (*Estate of Simonton,* 183 Cal. 53, 60 [190 P. 442] ; *Estate of Harris,* 9 Cal.2d 649, 662 [72 P.2d 873] ; *Estate of Rattray,* 13 Cal.2d 702, 705-706 [91 P.2d 1042] ; *Estate of Abdale,* 28 Cal.2d 587, 593 [170 P.2d 918] ; *Estate of Adams,* 132 Cal.App.2d 190, 196 [282 P.2d 190].)

Decedent's husband died in 1939 leaving a gross estate appraised at $160,946.38. This was alleged by the widow

in the probate of that estate to be community property. In 1941 the widow received under the decree of distribution property of the appraised value of $148,578.88. The widow's estate was appraised at $424,581.76. She died in 1954, approximately 15 years after her husband's death.

In the estate of the husband there was distributed to the widow 2,500 shares of common stock of The Chase National Bank appraised at $80,625 and 1,000 shares of the capital stock of The First Boston Corporation appraised at $16,250. Included in the present estate were 2,500 shares of common stock of The Chase National Bank appraised at $115,677.25 and 1,000 shares of the capital stock of The First Boston Corporation appraised at $43,916.67. There was also some other stock appraised as of no value in the present estate which apparently came from the husband's estate, but since this has no value we are justified in disregarding it.

As to the 2,500 shares of The Chase National Bank and the 1,000 shares of The Boston Corporation we are satisfied that the court was entitled to find that this was the same stock received by the widow from the estate of her husband. Finding the same number of shares of the same two corporations in both estates the court could reasonably conclude, in the absence of other proof, that they were the same shares of stock.

As to the balance of the two estates the situation is very different. No other property similar to any distributed in the predeceased husband's estate is found in the estate of his widow (with the exception of the worthless stock above noted). Deducting the sum of the amounts at which the Chase and Boston stock was appraised in the husband's estate ($96,875) from the total appraised value of the property received by the widow from her husband's estate ($148,578.88) we find that exclusive of the shares of those two corporations the widow received money and property of the appraised value of $51,703.88.

Making the same deduction in the present estate and subtracting the sum of the appraised values of the same shares of stock ($159,593.92) from the total appraised value of the present estate ($424,581.76) we find that the decedent left, exclusive of said shares of stock, an estate valued at $264,987.84.

The burden was thus placed upon respondents to prove that money and property of the value of $51,703.88 received by the decedent from her husband's estate was the source from

which, by investment and reinvestment or otherwise, the decedent had accumulated property and money of the value of $264,987.84, an increase in 13 years of more than five-fold.

The only evidence at all touching this question was given by an attorney who had acted as attorney for the decedent. To show its insubstantiality we quote the pertinent parts of that evidence:

The decedent had "(n)o independent earnings from any source other than her estate, so far as I was aware. . . . I am quite sure she was not employed, your Honor. If she was, I certainly was not aware of it.

"Q. You were her attorney during the entire period? A. I was.

"Q. You never heard of any inheritance by her . . .? A. No, I never heard of any inheritance. I learned—I learned of an acquisition of property, but how that was acquired I didn't know . . . I refer to some information that was disclosed in the course of the determination of the federal tax liability in Mr. Anderson's estate. . . .

"The information which I acquired. . . was in connection with an audit of the federal estate tax return filed in the Estate of George Lincoln Anderson . . . I called to Mrs. Anderson's attention . . . the information that was in Mr. Anderson's memorandum . . . I will read the exact wording of my letter:

" 'In another memorandum appearing on the date of 6-16-36 Mr. Anderson reported property in the amount of $53,250 as belonging to you . . . presumably Government bonds.'

"Now, the answer to that letter sent me by Mrs. Anderson . . . under date of January 14, 1941, contains this statement:

" 'The bonds belonged to me, that Mr. Anderson used to obtain some loans to buy stocks, Chase National, Amerex, and First of Boston . . . and I now am and have been for over two years the owner of $58,000 in Government bonds.' "

There was a motion to strike this as a self-serving declaration, which was denied. We do not treat this as substantive evidence that decedent owned $58,000 in bonds, but it is significant for the following reason: The attorney's evidence was produced in an attempt to prove that Mrs. Anderson had no separate property. It was only, at best, of such probative value as the failure of a client to inform her attorney that she owned separate property might tend to prove, because she mentioned no such property to her attorney, that

she in fact owned none. Whether such evidence would be sufficient to support a finding we do not decide, but the fact that she did inform her attorney that she owned separate property destroyed whatever negative probative value her failure to inform her attorney of such fact might otherwise have. ■ Furthermore the predeceased husband's memorandum that she owned $53,250 in government bonds was an admission of evidentiary value against his successors in interest that she did own separate property in that amount. (Code Civ. Proc., § 1853.)

The burden was on respondents to trace the community property of the husband into the estate of his wife. Except as to the Chase and Boston stock they failed to do so by any substantial evidence. ■ Where the estate is substantially the same in value and the surviving spouse has died shortly after the predeceased spouse without being gainfully employed the court may find from those facts that the property is the proceeds of the property received from the predeceased spouse. (*Estate of Adams, supra,* 132 Cal.App.2d 190, 205.) The rule is not fairly applicable to this case because of the great disparity of the value of the two estates and the fact that 15 years elapsed between the death of the husband and that of the wife.

■ One minor point remains. The decedent received $6,000 family allowance from the estate of her husband. This was her separate property. (*Estate of Simonton, supra,* 183 Cal. 53, 59.)

The executors ask us to order distribution in accordance with our conclusions. If respondents have no further evidence to offer the probate court should make such distribution.

The portion of the order and decree appealed from is affirmed as to the stock of The Chase National Bank and The Boston Corporation and as to the $4,239 executrix' fee; otherwise it is reversed.

Nourse, P. J., and Kaufman, J., concurred.