[No. H001459. Sixth Dist. Sept. 11, 1987.]

Estate of OBERLIN NERESON, Deceased.
ESTHER HANSON CARLSON, Claimant and Respondent, v.
MARJORIE NERESON, Individually and as Administratrix, etc.,
Objector and Appellant.

COUNSEL

Glynn P. Falcon and Chasuk, Falcon & Chasuk for Objector and Appellant.

Michael J. Oliver for Claimant and Respondent.

OPINION

**BRAUER, J.**—By a decree determining entitlement to distribution of the estate of Oberlin Nereson, the trial court ordered that the residence of the decedent and his predeceased wife be distributed one-half to his heir and one-half to her heirs, pursuant to Probate Code section 229, the so-called in-law inheritance statute. The decedent's heir appeals, claiming that the division of this asset must be adjusted to reflect infusions of capital by the decedent in the years following his wife's death. We agree, and we will therefore reverse and remand for further proceedings in accordance with the views expressed herein.

BACKGROUND

Oberlin Nereson (husband) and Ethel Nereson (wife) were married in 1933. They purchased a house in 1958 for $27,500, subject to a 20-year mortgage. Husband worked at Foothill College and was pensioned in 1970. Wife died in 1972. Her holographic will left everything to husband, including her interest in the house and joint bank accounts in the amount of approximately $60,000. It is undisputed that these assets were the couple's community property. At the time of wife's death the house was worth $50,000, and the remaining balance on the mortgage was $7,177.83. Husband continued to live in the house. In 1978 he made the last mortgage payment.

Husband died intestate in 1980. Two weeks before he died a fire occurred at the house. At the time of his death the property in its damaged condition was worth $160,000. Husband had maintained a fire insurance policy. The proceeds of this policy, $47,096, were received by the estate after his death. Marjorie Nereson, husband's sister and the administrator of his estate, applied this money to repair of the fire damage. She also used $5,529 of her own funds to complete the restoration. She occupied the house up to the date of trial. After repairs were made the house was valued at $220,000.

Husband's sister is his only blood heir. Two sisters of wife assert statutory heirship under Probate Code section 229, claiming entitlement to one-half of the proceeds from the sale of the house. Section 229 (now Prob. Code, § 6402.5) provided that "[i]f the decedent leaves no living spouse or issue . . . the portion of the decedent's estate attributable to the decedent's predeceased spouse" passes to the heirs of the predeceased spouse. (§ 229, subd. (a).) This portion is described, inter alia, as "[o]ne half of the community property in existence at the time of the death of the predeceased spouse." (§ 229, subd. (b)(1).)[1]

The rights of the in-law heirs[2] following the death of the first spouse are merely an expectancy, since the surviving spouse is absolute owner and can dispose of the property in his lifetime or by will. If he dies intestate and without issue however, these rights vest, and the heirs of the first spouse become statutory heirs of the second spouse, provided they can trace a former community property asset into the last estate. (*Estate of Perkins* (1943) 21 Cal.2d 561, 570 [134 P.2d 231].)

Here the house was unquestionably a community property asset of husband and wife, and it is part of husband's estate. Wife's sisters contend that these facts alone entitle them to a distribution of one-half the proceeds from the sale of the house, after husband's sister is reimbursed for personal funds spent by her on repairs. The trial court so ordered.

ISSUE

The appeal by husband's sister raises two claims: 1) The proceeds of the fire insurance policy represented a separate property contribution by husband, and his heir should be reimbursed for these amounts; and 2) Since husband paid the balance of the mortgage after the community was dissolved by the death of wife, the in-law heirs' share in the property should be adjusted downward.

---

[1] This version of the statute incorporated former sections 228 and 229. It was passed by the Legislature in May of 1980 (Stats. 1980, ch. 136, § 2, p. 320) in part to correct a drafting error contained in section 228 enacted the previous year. (Stats. 1979, ch. 298, § 1, p. 1109.) Husband died December 8, 1980; however, the amended statute did not become law until January 1981. Application of the statute in effect the year before and the year after husband died would produce identical results here. No purpose would be served by attempting to apply an intervening version of the statute containing a patent ambiguity. Both parties to this action have relied without question on section 229 as quoted above. We will accept it as the prevailing law in this case, satisfied that it effectuates the intent of the Legislature as expressed in the Senate and Assembly Reports on Assembly Bill No. 1750 (1979) and Senate Bill No. 1525 (1980). We also note that the principles we enunciate today are equally applicable to the statute in its present iteration. Unless otherwise indicated all further statutory references are to the Probate Code.

[2] We will be using this term as a convenient shorthand appellation for the heirs of the predeceased spouse who are entitled to inherit under section 229.

 Both claims present a single question: Where a former community property asset has been enhanced by the labor or capital of the survivor of two spouses, should the heirs of the survivor receive a greater share of the asset under Probate Code section 229 than the heirs of the predeceased spouse? Our answer is yes.

## DISCUSSION

 The purpose of the in-law inheritance statutes was to prevent all of the property jointly owned by the spouses from passing to the heirs of one spouse solely because that spouse survived the other. (*Estate of Sugino* (1968) 267 Cal.App.2d 591, 593 [73 Cal.Rptr. 150, 39 A.L.R.3d 1325].) "The scheme in general, as was fair and reasonable, provided that . . . the community property of the spouses should be shared equally by the relatives of the predeceased spouse and the relatives of the surviving spouse since both spouses are deemed to have contributed equally to its acquisition. . . ." (*Estate of Rattray* (1939) 13 Cal.2d 702, 713 [91 P.2d 1042].) "[U]pon the death of the survivor of the marriage, intestate and without issue, the property should go to the family or families of the spouse or spouses through whose efforts the estate was accumulated." (*Estate of Perkins, supra,* 21 Cal.2d 561, 569.)

Before the 1980 legislation combined the two statutes, section 228 described the in-laws' share in former community property while section 229 provided for the descent to them of former separate property of the predeceased spouse. Application of these statutes depended upon whether one spouse or both had originally acquired the property. This notion of succession based upon source of acquisition had its roots in feudal principles of ancestral property, the theory being that property should revert to the descendants of the first purchaser.[3] Cases interpreting the statutes therefore concerned themselves for the most part with tracing the asset from the time of the death of the first spouse backward to its original source. "In determining the character of property for the purpose of applying sections 228 and 229 of the Probate Code, it is the source of its acquisition, and not the nature of its ownership immediately before death, which is controlling." (*Estate of Reizian* (1951) 36 Cal.2d 746, 749 [227 P.2d 249].) For example, in several cases where property was held jointly at the time of the first spouse's death, courts nonetheless refused to apply section 228 if it was shown that the asset had initially been separate property of one spouse. (*Estate of Abdale* (1946) 28 Cal.2d 587, 590-592 [170 P.2d 918]; *Estate of McGee* (1959) 168 Cal.App.2d 670, 676-677 [336 P.2d 622].)

---

[3] See generally, Atkinson, Handbook of the Law of Wills (2d. ed. 1953) pages 77-81.

In the *Abdale* case the court discussed an apportionment of interests based on respective contributions of the spouses during the period before the first death. It found that the real estate held by the spouses as joint tenants when wife died had initially belonged to husband, and was therefore distributable only to his heirs. The court also found, however, that wife had contributed the amount of "twelve or fourteen hundred dollars" of her separate property funds to pay a special assessment on the property at one time. Since wife was therefore "the source of that part of the estate attributable to such payment," her heirs would be entitled to a proportionate share of husband's estate. (*Estate of Abdale, supra,* 28 Cal.2d at p. 593.)

■ The proposition urged by husband's heir here would carry the notion of apportioning interests one step further, to the period following the death of the first spouse. It is not, however, inconsistent with the general purposes behind the statute. Where there is evidence that one spouse has made a greater contribution to a community property asset than the other, both spouses cannot be "deemed to have contributed equally to its acquisition," (*Estate of Rattray, supra,* 13 Cal.2d 702) such as to give rise to an equal distribution to the relatives of each. In our view it is immaterial whether the contributions occurred before or after the death of the first spouse.

The in-law heirs in our case argue that the concept of apportioning interests based on contributions by the surviving spouse is unknown in the laws of intestate succession. As they see it section 229 operates simply to make them intestate heirs of husband as of the date of his death. As such they take on equal status with husband's blood heirs in regard to any former community property assets. In support of this position they point to the fact that virtually no case reported under sections 228 and 229 and their precursors over the last century[4] has adopted an allocation of interests to reflect a contribution by the surviving spouse.

■ These sections of the Probate Code, however, cannot be seen as simple succession statutes. Their application necessarily requires resort to rules governing community property as well as intestacy. (*Estate of Adams* (1955) 132 Cal.App.2d 190, 203 [282 P.2d 190].) While it is true that no court has expressly adopted an apportionment scheme such as that proposed here, neither has any court discussed and rejected the notion. In fact, several cases have stated that some sort of apportionment is appropriate where the increase in value of the asset in the years between the two deaths is due in part to the efforts and abilities of the surviving spouse.

---

[4] The in-law inheritance scheme dates back to 1880. (Acts Amendatory of The Civil Code (1880) ch. 115, § 1, p. 14.)

In *Estate of Brady* (1915) 171 Cal. 1 [151 P. 275], husband died 15 years after wife. The trial court found all of husband's estate consisted of rents, issues and profits traceable to community property he had owned with wife. The Supreme Court affirmed a disposition of half the estate to wife's heirs, stating the rule that the in-laws are entitled to share in the natural increase and profits of the former community property but "only . . . such proceeds and increase as are not due to the personal activity, ability, or capacity of the surviving spouse, these clearly not being included in [their share] . . . ." (*Id.*, at p. 7.) Since there was no such input by the survivor in the *Brady* case, the court did not discuss how the respective shares might be adjusted.

In *Estate of Adams, supra,* 132 Cal.App.2d 190, the trial court had found that the increase in value of an estate over 10 years following wife's death was due to a general rise in the stock market and not to husband's efforts. Concluding that this finding was not supported by the evidence, the Court of Appeal said this: "The court should have devised some formula by which the proportion of the increase due to the efforts of George between 1941-1951 could be computed and should have awarded this amount to the Adams claimants as separate property of the deceased." (*Id.*, at p. 203.) Since the *Adams* court went on to decide the case on a different ground, this suggestion remained dictum.

Citing both *Brady* and *Adams,* the court in *Estate of Bishop* (1962) 209 Cal.App.2d 48 [25 Cal.Rptr. 763] made a similar observation concerning separate property of a predeceased spouse which under former section 229 would pass back to the heirs of that spouse upon the intestate death of the survivor, saying that "any increase in the value thereof which is due to the personal activity, ability or capacity of the [survivor] . . . is not subject to succession under those provisions." (*Id.*, at p. 61.) Again, the facts of the *Bishop* case did not necessitate that the court apply this rule.

■ While these cases speak of enhancement due to the effort and ability of the surviving spouse, we see no reason why the same would not hold true where the survivor's contribution is in the form of infusion of capital rather than labor. (See, e.g., *Estate of Neilson* (1962) 57 Cal.2d 733 [22 Cal.Rptr. 1, 371 P.2d 745]; *In re Marriage of Moore* (1980) 28 Cal.3d 366, 371-372 [168 Cal.Rptr. 662, 618 P.2d 208].) This brings us to the problem of tracing the source of capital contributions made by husband.

The leading case in this area, *Estate of Adams, supra,* 132 Cal.App.2d 190, set forth some general rules regarding tracing. ■ While there is a presumption that property acquired during the marriage is community property, the presumption is reversed with regard to property acquired by

the surviving spouse after the community is dissolved. It is incumbent upon those claiming under the in-law statute to prove that assets found in the survivor's estate have retained their community property character. (*Id.,* at p. 204.)

Ordinarily this is a question of fact, and the finding of the trial court will be upheld if supported by substantial evidence. Where there has been a lengthy marriage, a short span between deaths, and no evidence of any separate income of the survivor, an inference that property in the last estate is community property will support a finding to that effect. (*Estate of Bryant* (1935) 3 Cal.2d 58 [43 P.2d 529].) "But directly or indirectly the one claiming that the property is community must sustain the burden of proof." (*Estate of Adams, supra,,* 132 Cal.App.2d at p. 205; *Estate of Anderson* (1956) 142 Cal.App.2d 391, 394-395 [298 P.2d 105].)

The in-law heirs here do not seriously attempt to trace either the mortgage payments or the fire insurance premium to a community property source. The only evidence presented at trial was that husband lived off his pension and social security benefits, that he earned a total of $2,500 following wife's death, and that he made certain investments with the money in the joint bank account. Wife's heirs did not claim a community property share in any of husband's estate other than the house.

■ Turning first to the fire insurance proceeds, the general rule is that insurance proceeds retain the same character as the premium paid. (*Grimm v. Grimm* (1945) 26 Cal.2d 173, 175 [157 P.2d 841].) Here the relevant premium was paid in 1980, the year the claim was made, eight years after wife's death. There is no evidence to support a finding that this premium was paid from former community property. In fact the court did not so find. It found only that "the insurance proceeds were expended for the restoration of the community asset . . . ." The court's conclusion that these funds were not reimbursible to husband's heir was based upon the following: 1) the administratrix was under a duty to maintain the property of the estate in good repair,[5] and 2) once she applied the proceeds of the fire insurance to repair the damage, this money merged with the property and took on the status of community property subject to section 229. Assuming that the administratrix's duty to preserve estate property extended to this situation, it does not follow that money applied for the purpose of repairing fire

[5]The decree cites Probate Code section 400 as the codification of this rule. That section provides as follows: "No person has any power of an executor until he qualifies, except that, before letters are issued, he may pay the funeral charges and take necessary measures for the preservation of the estate." In addition we note that section 581 provides that the administrator must "keep in good tenantable repair all houses, buildings and fixtures thereon which are under his control."

damage was somehow irretrievably commingled or transmuted to community property. We have been cited to no authority persuading us of the merit of this argument.

The case relied upon by the in-laws, and cited by the trial court in its statement of decision, *Estate of Allie* (1958) 50 Cal.2d 794 [329 P.2d 903], is inapposite. That case concerned the disposition of life insurance proceeds. The premiums had been paid with community funds during the lifetimes of husband and wife. The proceeds were therefore community property for inheritance purposes. In our case the fire insurance proceeds must be presumed to be separate property in husband's estate, since wife's heirs cannot establish a community property source. (*Estate of Adams, supra,* 132 Cal.App.2d 190.)

In regard to the mortgage, the in-laws point out that the greater part of husband's assets and income after wife's death derived from community property; thus the payments should be considered to have come from a community property source. The evidence summarized above shows only that husband's income was mixed and that he made various investments in the years after wife's death. Applying the principles set forth in *Adams,* this evidence does not support the inference that husband preserved the community property estate and paid the mortgage with those funds. (*Id.,* at p. 205.)

The trial court made no specific finding with regard to the source of the mortgage payoff, saying only that the real property had not been "changed or commingled." This language is apparently in reference to *Adams,* upon which both parties relied. The *Adams* case involved a somewhat different tracing problem. When wife died husband took control of former community property funds, in addition to separate property funds held by him. He then made hundreds of investments over the course of 10 years. Though the in-laws could not trace which specific transactions involved community funds and which involved husband's separate property, the trial court awarded them a share of husband's estate based on the proportion the community property funds bore to the entire amount in husband's possession upon wife's death. The Court of Appeal reversed this judgment, finding that the claimants must trace the community property through identifiable transactions from one estate to another. ■ "If, after the death of the predeceased spouse, the surviving spouse commingles the community property with his separate property so that it cannot be traced to its origin as part of the community property, the heirs claiming under Probate Code, section 228, have not sustained their burden, and the entire commingled property will be treated as the separate property of the surviving spouse." (*Id.,* at pp. 203-204.)

Property can, however, be "commingled without destroying the character of the contributions, as long as the respective amounts can be ascertained. (*In re Marriage of Mahone* (1981) 123 Cal.App.3d 17, 24 [176 Cal.Rptr. 274].) "In such cases, the property cannot be considered entirely community by virtue of commingling of separate and community assets, for the separate and community sources of the property can be traced." (*Estate of Neilson, supra*, 57 Cal.2d 733, 744.) In our case, the amount of the contribution made by husband after wife's death was easily ascertainable as the amount of the remaining balance on the mortgage. The only issue was whether these payments were traceable to a community property source. Under *Adams*, the burden of this tracing falls upon the claimants. Since the source of payments could not be proved, the payments must be deemed to have been separate property contributions.

The in-law heirs contend that there must be a shifting of burdens: once they establish that a former community property asset exists in husband's estate, it is up to husband's heir to prove that contributions made by him were separate property. We are cited to no authority for this proposition, other than the *Adams* case. In our view *Adams* is not susceptible of such an interpretation.

Having established that husband made certain separate property contributions to a community property asset following wife's death, we next address the question how husband's heir must be compensated for these contributions.

It seems clear that for purposes of succession under section 229 of the Probate Code, " 'the statutory provisions determining what is community property as construed by our decisions remain in force and applicable throughout the life of the surviving spouse, as to all property constituting community property of the spouses at the time of the death of the predeceased spouse.' " (*Estate of Adams, supra*, 132 Cal.App.2d at p. 203.) This language indicates that the rules of apportionment commonly used to determine community and separate interests of the spouses following separation are appropriate in a situation such as ours, where a community property asset has increased in value in part due to natural appreciation and in part due to the efforts of one spouse. One well known commentator in this field has sanctioned this approach: "[A] kind of *Pereira-Van Camp* apportionment seems to be called for, allocating some of the profit as a return on capital (and subject to section 229) and some of it as a return on labor, as to which [the second spouse] is the source."[6]

---

[6] Reppy and Wright, *California Probate Code, § 229: Making Sense of a Badly Drafted Provision for Inheritance by a Community Property Decedent's Former In-Laws* (Spring 1981) Community Prop. J. pages 107-137, at page 135.

In a postcommunity setting, the *Pereira*[7] formula would assign a fair return to the community property share, as that share is valued at the time of the first death. Where the asset is real property, a fair return could be calculated by reference to the average annual appreciation rate for real property in the area. In cases where the survivor has improved the property with labor or capital, or both, this approach operates to allocate to the community only the natural increase over time, while the heirs of the survivor reap the benefits of his additional contributions. The in-laws' share must of course be subject to an upper limit of one-half the actual value of the asset in the last estate. The *Van Camp*[8] formula would assign a value to the survivor's contributions and allocate this amount to the separate property share. Husband's heir here has suggested what amounts to a combination of the two formulae, seeking a reimbursement for the fire insurance proceeds and a pro tanto share representing the payoff of the mortgage.

It may well be that different approaches are appropriate depending upon the timing and the circumstances of the survivor's contributions. We do not speculate on the proper formula to be used in this case. Indeed the court is not bound to adopt either *Pereira* or *Van Camp* "but may select whatever formula will achieve substantial justice between the parties." (*Logan* v. *Forster* (1952) 114 Cal.App.2d 587, 600 [250 P.2d 730].) " 'In making such apportionment between separate and community property our courts have developed no precise criterion or fixed standard, but have endeavored to adopt that yardstick which is most appropriate and equitable in a particular situation . . . .' " (*Beam* v. *Bank of America* (1971) 6 Cal.3d 12, 18 [98 Cal.Rptr. 137, 490 P.2d 257].) The court thus has considerable discretion in choosing a method of allocating separate and community property interests. Any reasonable allocation plan will be upheld on appeal if supported by substantial evidence. (*In re Marriage of Folb* (1975) 53 Cal.App.3d 862, 873-874 [126 Cal.Rptr. 306], disapproved on another ground in *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 749, fn. 5 [131 Cal.Rptr. 873, 552 P.2d 1169]; *Logan* v. *Forster, supra,* 114 Cal.App.2d 587, 600.)

■ In summary, we hold that the in-law heirs' share of a former community property asset under Probate Code section 229 is subject to rules of apportionment where separate property contributions have been made by the surviving spouse.

The decree determining entitlement is reversed in regard to the disposition of the real property, and the cause is remanded with directions that

---

[7] *Pereira* v. *Pereira* (1909) 156 Cal.1; see *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432 [119 Cal.Rptr. 590] discussing postseparation application of *Pereira* and *Van Camp.*

[8] *Van Camp* v. *Van Camp* (1921) 53 Cal.App. 17 [199 P. 885].

further proceedings be conducted by the trial court in accordance with the views expressed herein. Costs on appeal to appellant.

Agliano, P. J., and Capaccioli, J., concurred.