[No. C015964. Third Dist. May 31, 1994.]

Estate of JESS STANLEY NEWMAN, Deceased.
CECIL C. FINN, Petitioner and Appellant, v.
CHARLES NEWMAN, Objector and Respondent.

**COUNSEL**

McMurchie, Foley, Brandenburger, Weill & Lenahan and Stephen A. Brandenburger for Petitioner and Appellant.

Meckfessel, Hopkins & Byrd and Kenneth M. Hopkins for Objector and Respondent.

**OPINION**

**DAVIS, J.**—This appeal involves the application of the so-called in-law inheritance statute, former Probate Code section 229,[1] to the distribution of the estate of Jess Stanley Newman, who died on July 29, 1983. Cecil C. Finn, a nephew of Jess's predeceased wife Frances Elizabeth Newman, filed a petition alleging Jess's entire probate estate should go to Frances's blood relatives pursuant to section 229, subdivision (b)(5). The estate consists entirely of real property originally acquired by Frances as her separate property by deed from her mother. The trial court found Frances's former separate property had been transmuted into community property prior to her death on November 12, 1982. It distributed one-half of Jess's probate estate to Jess's blood relatives and one-half to Frances's blood relatives, presumably under former section 229, subdivision (b)(2).

Finn raises two issues on appeal. First, he contends there is insufficient evidence Frances intended to transmute her separate property into community property. Second, and more importantly, he asserts the character of the

---

[1] Section 229 was repealed effective January 1, 1985, but continues to apply to the estates of decedents who died before that date. (Prob. Code, § 6414.)

All statutory references are to the Probate Code unless otherwise indicated.

property at Frances's death is irrelevant. Citing *Estate of Reizian* (1951) 36 Cal.2d 746 [227 P.2d 249], and *Estate of Abdale* (1946) 28 Cal.2d 587 [170 P.2d 918], Finn argues that "[i]n determining the character of property for the purpose of applying [section 229] of the Probate Code, it is the source of its acquisition, and not the nature of its ownership immediately before death, which is controlling." (*Estate of Reizian, supra*, 36 Cal.2d at p. 749; *Estate of Abdale, supra*, 28 Cal.2d at pp. 590-591.) This issue has continuing interest because the provisions of former section 229, subdivision (b)(1), (b)(2) and (b)(5) are repeated without material change in the current section 6402.5, subdivision (f)(1), (f)(2) and (f)(4).

We conclude the "source rule" applies to property transmuted from separate property to community property during Frances's lifetime. Thus, the court erred in treating Frances's former separate property as community property for purposes of distribution under section 229. We therefore reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The subject of this dispute is an undivided one-third interest in a 52-acre parcel of real property located in Los Angeles County. Frances and her brother and sister received equal shares of the property in a deed executed by their mother, Elizabeth Teeple, on May 3, 1960.

Frances and Jess lived on the property from approximately 1937 or 1938 until sometime in the 1960's, possibly as late as 1968. Frances and Jess moved to Orland, California, in 1971 or 1972, where they lived until their deaths.

On June 29, 1974, Frances and Jess executed essentially reciprocal wills under which Frances left the residue of her estate, including the interest in the real property, to Jess if he survived her. Likewise, Jess left all of his estate to Frances, if she survived him. In the event either Jess or Frances failed to survive the other, their estates would go to Jess's sister Hassie Sherwood. Neither Frances nor Jess had children. Hassie Sherwood died without issue in August 1982. There is no dispute Jess's residuary estate passes by intestate succession in the absence of an alternate beneficiary.

Frances's will and Jess's will were admitted to probate in Glenn County. The court appointed Charles Newman, Jess's brother, administrator in both estates.

At trial, the court accepted an offer of proof regarding Charles Newman's testimony. Charles lived in Orland at the same time Frances and Jess lived

there, and had contact with his brother and sister-in-law two or three times a week. Periodically, he heard Frances and Jess mention the Los Angeles County property. In each instance, the property was referred to as "our property," or words to that effect. Neither Frances nor Jess ever referred to the property as belonging to Frances. The court also admitted documentary evidence relating to the question of transmutation.

The court's decree includes the following findings:

"6.   The estate consists entirely of real property acquired by the Decedent's predeceased spouse, FRANCES ELIZABETH NEWMAN, as her Separate Property by deed dated May 3, 1960, from her mother, ELIZABETH TEEPLE.

"7.   From the date of the conveyance of the property in 1960 from ELIZABETH TEEPLE to her daughter FRANCES NEWMAN up to the time of death of FRANCES NEWMAN on November 12, 1982, a period of over 22 years, the Decedent, JESS STANLEY NEWMAN, and his predeceased wife, FRANCES NEWMAN, treated this property as their own thereby transmuting FRANCES NEWMAN's separate property interest into Community Property of FRANCES NEWMAN and JESS STANLEY NEWMAN.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"9.   Inasmuch as the property was community property, ½ thereof already belonged to JESS and the other ½ was received by JESS as a result of the will of FRANCES NEWMAN."

The court distributed one-half of Jess's community property to his blood relatives, including Charles Newman, and Frances's one-half of the community property to her blood relatives, including Finn, in stated proportions.

## DISCUSSION

### I.   *The Statutory Scheme*

At the time of Jess's death in July 1983, section 229 read in relevant part:

"(a)   If the decedent leaves no living spouse or issue and there are issue of the decedent's predeceased spouse, the portion of the decedent's estate attributable to the decedent's predeceased spouse shall go in equal shares to the children of the predeceased spouse and to their descendants by right of representation, and if none, then to the parents of the predeceased spouse, in equal shares, or if either is dead to the survivor, or if both are dead, in equal

shares to the brothers and sisters of the predeceased spouse and to their descendants by right of representation.

"(b)  For the purposes of this section, the 'portion of the decedent's estate attributable to the decedent's predeceased spouse' shall mean:

"(1)  One-half of the community property in existence at the time of the death of the predeceased spouse.

"(2)  One-half of any community property, in existence at the time of death of the predeceased spouse, which was given to the decedent by the predeceased spouse by way of gift, descent, devise, or bequest.

". . . . . . . . . . . . . . . . . . . . . .

"(5)  Any separate property of the predeceased spouse which came to the decedent by gift, descent, devise, or bequest of the predeceased spouse or which vested in the decedent upon the death of the predeceased spouse by right of survivorship."

Section 229 is the product of California's unique intestate succession scheme under which a significant portion of the decedent's estate may pass to the decedent's in-laws rather than the decedent's blood relatives. It is based on the feudal doctrine of descent of ancestral property which distributes the intestate's property according to its origin or source of acquisition. (Popovich, *It's All Mine—Or at Least Part of It Is: A California Look at Property Apportionment Between the Families of an Intestate and an Intestate's Predeceased Spouse* (1989) 16 Pepperdine L.Rev. 831, 831-832; see also Niles, *Probate Reform in California* (1979) 31 Hastings L.J. 185, 203.)

Section 229 finds its origin in 1880, when the Legislature added an anti-escheat provision to Civil Code former section 1386. In its original form as Civil Code section 1386, subdivision 9, the statute provided that where a widow or widower died intestate without kindred, and any portion of the estate included community property of the decedent and his or her predeceased spouse, such property should go to designated relatives of the predeceased spouse in the following order: father, mother, brothers and sisters, and the lawful issue of any deceased brothers and sisters. (Stats. 1880, ch. 115, § 1, p. 15; *Estate of McInnis* (1986) 182 Cal.App.3d 949, 952 [227 Cal.Rptr. 604].)[2]

The Legislature expanded the scope of Civil Code section 1386 in 1905. Renumbered as subdivision 8, the amended statute added the "issue" of the

[2]Subdivision 9 read in its entirety: "If the decedent be a widow or widower, and leave no kindred, and the estate, or any portion thereof, was common property of such decedent, and

predeceased spouse to the top of the list of relatives entitled to share in the decedent's property. The Legislature also made the provision applicable to property which had previously been the separate property of the predeceased spouse. Under the 1880 version, the in-law provision was operative where the decedent left no "kindred." The new language substituted "issue" for "kindred." (Stats. 1905, ch. 449, § 1, pp. 608-609.)[3] Thus, the 1905 revision gave heirship preference to the decedent's stepchildren and in-laws to the exclusion of the decedent's parents, brothers, and sisters.

The 1907 amendment to Civil Code section 1386, subdivision 8, provided that community property of the decedent and predeceased spouse should go to the children of the predeceased spouse and their descendants by right of representation unless the predeceased spouse had no living children. In that event, the property was divided equally between designated relatives of the decedent and designated relatives of the predeceased spouse. The amendment also provided that if the estate included separate property of the predeceased spouse which came to the decedent by descent, devise or bequest, that property would go to the relatives of the predeceased spouse. (Stats. 1907, ch. 297, § 1, pp. 568-569.)[4]

his or her deceased spouse, while such spouse was living, such common property shall go to the father of such deceased spouse, or if he be dead, to the mother. If there be no father nor mother, then such property shall go to the brothers and sisters of such deceased spouse, in equal shares, and to the lawful issue of any deceased brother or sister of such deceased spouse, by right of representation." (Stats. 1880, ch. 115, § 1, p. 15.)

[3]Civil Code former section 1386, subdivision 8, read: "If the decedent is a widow or widower, and leaves no *issue*, and the estate or any portion thereof was common property of such decedent and his or her deceased spouse, while such spouse was living, *or was separate property of his or her deceased spouse*, while such spouse was living, such property goes to the *children* of such deceased spouse and the descendants thereof, and if none, then to the father of such deceased spouse, or if he is dead, to the mother. If there is no father nor mother, then such property goes to the brothers and sisters of such deceased spouse, in equal shares, and to the lawful issue of any deceased brother or sister of such deceased spouse by right of representation." (Stats. 1905, ch. 449, § 1, pp. 608-609, italics added.)

[4]The 1907 amendment read: "If the deceased is a widow, or widower, and leaves no issue, and the estate, or any portion thereof, was common property of such decedent and his or her deceased spouse, while such spouse was living, such property goes in *equal shares* to the children of such deceased spouse and to the descendants of such children by right of representation, and if none, then *one-half* of such common property goes to the father and mother of such decedent in equal shares, or to the survivor of them if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such decedent and to the descendants of any deceased brother or sister by right of representation, *and the other half goes* to the father and mother of such deceased spouse in equal shares, or to the survivor of them if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such deceased spouse and to the descendants of any deceased brother or sister by right of representation.

"*If the estate, or any portion thereof, was separate property of such deceased spouse, while living, and came to such decedent from such spouse by descent, devise, or bequest, such*

In 1930, the California Supreme Court addressed an ambiguity in section 1386, subdivision 8. In *Estate of McArthur* (1930) 210 Cal. 439 [292 P. 469, 72 A.L.R. 1318], the decedent remarried after the death of her first husband. She was survived by her second husband when she died intestate. The estate consisted of the community property the decedent and her first husband had accumulated during marriage. The probate court found the in-law inheritance statute inapplicable because the decedent was not a "widow" at her death. It distributed the estate to the surviving husband to the exclusion of the in-laws. (*Id.* at pp. 440-441.) The Supreme Court reversed, concluding the remarriage of the "widow" had no effect on the operation of Civil Code section 1386, subdivision 8. "To adopt the view contended for by [the second husband], that the legislature intended to exclude from subdivision 8 a widow who subsequently remarried, would lead to results which are contrary to the plain purpose of the provision" (210 Cal. 439 at p. 447), namely, that one-half of the property representing the community property interest of the deceased husband should go to his family. (*Id.* at p. 445.)

In 1931 the Legislature enacted in its entirety the Probate Code which had been prepared and proposed by a code commission appointed in 1929. (*Estate of Rattray* (1939) 13 Cal.2d 702, 712 [91 P.2d 1042].) The first paragraph of Civil Code section 1386, subdivision 8, was reenacted as section 228 of the Probate Code, and the second paragraph was reenacted as section 229 of the Probate Code. (*Ibid.*) Thus, section 228 addressed the situation where all or a portion of the decedent's estate was community property of the decedent and a predeceased spouse. Section 229 applied where all or a portion of the decedent's estate was separate property of the predeceased spouse.[5] Both provisions substituted "decedent" for "widow" and "widower" in accordance with the Supreme Court's decision in *Estate of*

---

*property goes in equal shares to the children of such spouse and* to the descendants of any deceased child by right of representation, and if none, then to the father and mother of such spouse, in equal shares, or to the survivor of them if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such spouse and to the descendants of any deceased brother or sister by right of representation." (Stats. 1907, ch. 297, § 1, pp. 568-569, italics added.)

[5] In 1931, section 228 provided: "If the *decedent* leaves no issue, and the estate or any portion thereof was community property of the decedent and a previously deceased spouse, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then one-half of such community property goes to the parents of the decedent in equal shares or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent and to their descendants by right of representation, and the other half goes to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of such deceased spouse and to their descendants by right of representation.

In 1931, section 229 provided: "If the *decedent* leaves no issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the

*McArthur.* In the new section 229, the "word, 'gift' was added to the phrase, 'descent, devise, or bequest' in order, as stated by the code commission, 'to make the section logically complete.' " (*Estate of Rattray, supra,* 13 Cal.2d at p. 712.) Under the 1931 revision, all the property which had been community property of the decedent and a predeceased spouse was distributed to the issue of the predeceased spouse if they were living. If not, the community property in question was divided equally between specified relatives of the decedent and specified relatives of the predeceased spouse. The statutory change also excluded the decedent's surviving spouse from any share of the estate of the decedent which was community or separate property in the decedent's prior marriage.

The Supreme Court addressed an inconsistency in the 1931 versions of sections 228 and 229 in *Estate of Rattray, supra,* 13 Cal.2d 702, establishing principles applied to California's in-law inheritance statutes since that date. James Rattray died, leaving his share of community property to Elizabeth Rattray by will. When Elizabeth died intestate, leaving neither spouse nor issue, her estate included community property of James and Elizabeth which had come to Elizabeth by gift during her husband's lifetime. The probate court treated the property as community property and distributed it in accordance with section 228. (13 Cal.2d at pp. 703-704.) The Supreme Court considered the question whether section 228 included community property transferred to the decedent by inter vivos gift. Affirming the trial court judgment, the Supreme Court articulated the rationale for the in-law inheritance statutes: "It is apparent from the history of these code provisions and the various changes therein that ever since the amendment in 1905, wherein the origin or source of the property was first set up as one of the determining factors in the descent and distribution of the estate of a decedent dying intestate without issue, that there has been a consistent attempt to work out a reasonable, consistent scheme of distribution wherein upon the death of a decedent intestate without issue, instead of the whole property going to the relatives of the last surviving spouse, the property should go back to the relatives of the spouse from which title was derived. The scheme in general, was fair and reasonable, provided that the separate property of a predeceased spouse should go back in its entirety to the relatives of said predeceased spouse, and that the community property of the spouses should be shared equally by the relatives of the predeceased spouse and the relatives of the surviving spouse since both spouses are deemed to have contributed equally

decedent from such spouse by gift, descent, devise or bequest, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation." (Stats. 1931, ch. 281, p. 597, italics added.)

to its acquisition." (*Id.* at p. 713.) The two code sections were originally contained in a single subdivision of Civil Code section 1386 "and were intended to furnish one general plan of distribution based upon the same underlying fundamental principle, that the origin or source of the property should determine its distribution." (13 Cal.2d at p. 714.)

The 1939 amendment to sections 228 and 229 made the in-law statutes inapplicable where the decedent had a surviving spouse. It also added the "gift, descent, devise or bequest" language to section 228. (Stats. 1939, ch. 1065, § 1, pp. 2992-2993.)[6]

The Legislature amended sections 228 and 229 again in 1979, adding the phrase "the portion of the decedent's estate attributable to the decedent's predeceased spouse" to both sections. Under section 228, "the 'portion of the decedent's estate attributable to the decedent's predeceased spouse' " included: "(1) One-half of the community property in existence at the time of the death of the predeceased spouse" and "(2) One-half of any community property, in existence at the time of death of the predeceased spouse, which was given to the decedent by the predeceased spouse by way of gift, descent, devise, or bequest." (Stats. 1979, ch. 298, § 1, p. 1109.)[7] Under the amended section 229, the phrase was defined as "any separate property of the predeceased spouse which came to the decedent by gift, descent, devise, or

---

[6]Under the 1939 amendment, section 228 read: "If the decedent leaves *neither spouse nor issue*, and the estate or any portion thereof was community property of the decedent and a previously deceased spouse, and belonged or went to the decedent by virtue of its community character on the death of such spouse, or *came to the decedent from said spouse by gift, descent, devise or bequest*, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead, or in a joint tenancy between such spouse and the decedent or was set aside as a probate homestead, such property goes in equal shares to the children of the deceased spouse and their descendants by right of representation, and if none, then one half of such community property goes to the parents of the decedent in equal shares, or if either is dead to the survivor, of if both are dead in equal shares to the brothers and sisters of the decedent and their descendants by right of representation, and the other half goes to the parents of the deceased spouse in equal shares, of if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of said deceased spouse and to their descendants by right of representation." (Italics added.)

Section 229 read: "If the decedent leaves *neither spouse nor issue*, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead or in a joint tenancy between such spouse and the decedent, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation."

[7]In 1979, section 228 provided:

"(a)  If the decedent leaves no living spouse or issue and there are issue of the decedent's predeceased spouse, *the portion of the decedent's estate attributable to the decedent's predeceased spouse* shall go in equal shares to the children of the predeceased spouse and their

bequest of the predeceased spouse or which vested in the decedent upon the death of the predeceased spouse by right of survivorship." (Stats. 1979, ch. 298, § 2, p. 1110.)[8] "[T]he 1979 amendment to section 228 was worded in

descendants by right of representation, and if none, then one-half of such portion goes to the parents of the decedent in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent and their descendants by right of representation, and the other half goes to the parents of the predeceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the predeceased spouse and to their descendants by right of representation.

"(b)  For purposes of this section the *portion of the decedent's estate attributable to the decedent's predeceased spouse*' shall mean:

"(1)  One-half of the community property in existence at the time of the death of the predeceased spouse.

"(2)  One-half of any community property, in existence at the time of death of the predeceased spouse, which was given to the decedent by the predeceased spouse by way of gift, descent, devise, or bequest.

"(3)  That portion of any community property in which the predeceased spouse had any incident of ownership and which vested in the decedent upon the death of the predeceased spouse by right of survivorship.

"(4)  That portion of any property which, because of the death of the predeceased spouse became vested in the decedent and was set aside as a probate homestead.

"(c)  That portion of the decedent's estate not otherwise subject to this section shall be distributed pursuant to the provisions of this article, except that if a portion of the decedent's estate would otherwise escheat to the state because there is no relative, including next of kin, such portion of the estate shall be distributed in equal shares to the children of the predeceased spouse and to their descendants by right of representation.

"(d)  If any of the property subject to the provisions of this section would otherwise escheat to this state because there is no relative, including next of kin, of one of the spouses to succeed to such portion of the estate, such property shall be distributed in accordance with the provisions of Section 296.4 of this code." (Italics added.)

[8]The 1979 amendment to section 229 provided:

"(a)  If the decedent leaves no living spouse or issue and there are issue of the decedent's predeceased spouse, *the portion of the decedent's estate attributable to the decedent's predeceased spouse* shall go in equal shares to the children of the predeceased spouse and to their descendants by right of representation, and if none, then to the parents of the predeceased spouse, in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the predeceased spouse and to their descendants by right of representation.

"(b)  For the purpose of this section, the *portion of the decedent's estate attributable to the decedent's predeceased spouse*' means any separate property of the predeceased spouse which came to the decedent by gift, descent, devise, or bequest of the predeceased spouse or which vested in the decedent upon the death of the predeceased spouse by right of survivorship.

"(c)  Notwithstanding subdivision (a), if the decedent leaves neither issue nor spouse, that portion of the decedent's estate created by gift, descent, devise, or bequest from the separate property of a parent or grandparent shall go to the parent or grandparent who made such gift, devise, or bequest or from whom the property descended, or if such parent or grandparent is dead, such property shall go in equal shares to the heirs of such deceased parent or grandparent.

"(d)  If any of the property subject to the provisions of this section would otherwise escheat to this state because there is no relative, including next of kin, of one of the spouses

such a manner that only one-fourth (one-half of the one-half) of the community property would go to the predeceased spouse's parents or collateral heirs if the predeceased spouse had no issue." (*Estate of McInnis, supra,* 182 Cal.App.3d at p. 955.)

In 1980, the Legislature enacted the version of the in-law inheritance statute now before us by repealing former section 228 and consolidating former sections 228 and 229 into one statute. (Stats. 1980, ch. 136, §§ 1 & 2, pp. 320-321.) These amendments also eliminated the inequity in the share of community property distributed to the parents and collateral heirs of the predeceased spouses. (*Estate of McInnis, supra,* 182 Cal.App.3d at p. 955.)

This statutory history reflects the Legislature's consistent intent to distribute property of persons who die intestate without living spouse or issue in accordance with the doctrine of descent of ancestral property.

## II. *Construction of Section 229*

Simply phrased, Finn asserts Jess's estate should be distributed in accordance with section 229, subdivision (b)(5), and Newman contends section 229, subdivision (b)(2), applies. At oral argument, discussion focused on apparent inconsistencies between the critical subdivision (b)(1), (b)(2) and (b)(5). Specifically, the court asked the parties to explain the difference between subdivision (b)(1) and (b)(2) in light of the placement of the phrase "in existence at the time of death of the predeceased spouse" in each one. The parties also debated whether subdivision (b)(2) or (b)(5) applies to property transmuted from separate property to community property before the death of the predeceased spouse. We employ well-established rules of construction to reconcile the awkwardly drafted provisions.

" 'Our function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. To ascertain such intent, courts turn first to the words of the statute itself, and seek to give the words employed by the Legislature their usual and ordinary meaning. When interpreting statutory language, we may neither insert language which has been omitted nor ignore language which has been inserted. The language must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute, and where possible the language should be read so as to conform to the spirit of the enactment.' [Citations.]" (*Viking Ins. Co.* v. *State Farm Mut. Auto Ins. Co.* (1993) 17 Cal.App.4th 540, 546 [21

to succeed to such portion of the estate, such property shall be distributed in accordance with the provisions of Section 296.4." (Italics added.)

Cal.Rptr.2d 590], quoting *Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 952 [268 Cal.Rptr. 624] [*Rudd*].) More important for our purposes, " '[i]t is fundamental that legislation should be construed so as to harmonize its various elements without doing violence to its language or spirit. Wherever possible, potentially conflicting provisions should be reconciled in order to carry out the overriding legislative purpose as gleaned from a reading of the entire act. [Citation.] A construction which makes sense of an apparent inconsistency is to be preferred to one which renders statutory language useless or meaningless.' " (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 326 [14 Cal.Rptr.2d 813, 842 P.2d 112], quoting *Wells* v. *Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 788 [176 Cal.Rptr. 104, 632 P.2d 217].) We aim for a construction which "will result in wise policy rather than mischief or absurdity." (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].)

Turning to section 229, the statute at issue, we start with subdivision (b)(5), which deals with separate property. The language does not specify that the separate property must have been "in existence at the time of the death of the predeceased spouse," language which causes the grammatical problem in subdivision (b)(1) and (b)(2). Instead, subdivision (b)(5) applies to any separate property which "came" to the decedent by "gift, descent, devise, or bequest of the predeceased spouse . . . ." Because "gift" is included, which can only occur inter vivos, the provision necessarily applies to property which was not separate property on the date of the predeceased spouse's death, to wit, property which began as the separate property of the predeceased spouse and came to the decedent during the life of the predeceased spouse. We conclude subdivision (b)(5) applies to the property which had its source as Frances's separate property and came to Jess by gift of a community interest during Frances's lifetime.

It remains to be explained how the language of section 229, subdivision (b)(1) and (b)(2) should be read. We reject a construction that the language of subdivision (b)(1) and the first clause of (b)(2) are substantially the same, and should be read the same.[9] Such a reading has the consequence of surplusage, a disfavored result in statutory construction. (*Lambert Steel Co.* v. *Heller Financial, Inc.* (1993) 16 Cal.App.4th 1034, 1040 [20 Cal.Rptr.2d 453].) It also puts subdivision (b)(2) in conflict with (b)(5), another disfavored result. As we explained, our purpose is to resolve, not create, ambiguities and conflicts.

---

[9]Section 229, subdivision (b)(1), reads: "One-half of the community property in existence at the time of the death of the predeceased spouse." The first clause of subdivision (b)(2) reads: "One-half of any community property, in existence at the time of death of the predeceased spouse, . . ."

We therefore conclude that the modifying clause of section 229, subdivision (b)(2)—"which was given to the decedent by the predeceased spouse by way of gift, descent, devise, or bequest"—must be given controlling significance. Since this clause, like that in subdivision (b)(5), includes a "gift" necessarily occurring during the predeceased spouses' lifetime, the first clause cannot be read as saying that it applies *only* in the case in which the property is community property "at the time of the death of the predeceased spouse . . . ." We parse subdivision (b)(2) in the following way to show its intended meaning: "One-half of any [] property in existence at the time of the death of the predeceased spouse, [which had been community property], which was given to the decedent by the predeceased spouse by way of gift, descent, devise, or bequest, [or which vested in the decedent upon the death of the predeceased spouse by right of survivorship]." This construction is consistent with former section 228 from which section 229, subdivision (b)(1) and (b)(2) was derived. "The phrase 'was community property' in section 228 necessarily refers to the character of the property before it was placed in joint tenancy." (*Estate of Abdale, supra,* 28 Cal.2d at p. 592.)

Thus harmonized, subdivision (b) of section 229 applies as follows: (1) (b)(1) applies to cases in which the property was always community property of the decedent and the predeceased spouse; (2) (b)(2) applies when the property was originally the community property of the decedent and the predeceased spouse and the predeceased spouse's share becomes the property of the decedent "by way of gift, descent, devise, or bequest" of the predeceased spouse, that is, either during his or her life or upon his or her death; and (3) (b)(5) applies to cases in which the property was originally the separate property of the predeceased spouse and came to the decedent "by gift, descent, devise, or bequest" of the predeceased spouse. Our construction accords with the perceived intent of the statute to trace the character of the property to its original status in the hands of the predeceased spouse, as was the case with the statutes from which section 229 was derived.

### III. *Application of the "Source Rule" to Transmutations*

As we stated, Finn relies on a line of cases which look at the source of the property's acquisition to determine its character for purposes of applying section 229. Under Finn's analysis, once the property is acquired by the predeceased spouse as his or her separate property, it is always separate property subject to distribution under subdivision (b)(5).

Newman maintains the source rule is inapplicable to property that is transmuted from separate property to community property before the death

of the predeceased spouse. He says distribution of such property pursuant to section 229, subdivision (b)(2) better reflects the intent of the predeceased spouse at the time of his or her death. Specifically, he disagrees with Finn that nothing occurred between May 1960, when Frances received the grant of separate property from her mother, and July 1982, when Frances died, to change the character of the property for purposes of distribution under section 229. Newman complains Finn relies solely on cases involving property held in joint tenancy at the death of the predeceased spouse. To take the argument a step further, those rulings are consistent with the principle that common law forms of conveyance and title may not be used to alter the property's underlying character as separate or community. (See *Tomaier* v. *Tomaier* (1944) 23 Cal.2d 754, 757 [146 P.2d 905].) In contrast with the joint tenancy, which merely describes the form of title, transmutation changes the character of the property.

There is no merit in Newman's argument. ■ The California Supreme Court makes clear the Legislature intended section 229 and its statutory predecessors to effectuate a theory of distribution in which the source of the property's acquisition is controlling. (*Estate of Reizian, supra,* 36 Cal.2d at p. 749.) Case authority is consistent with this legislative purpose. (See *Estate of Rattray, supra,* 13 Cal.2d 702; and *Estate of McArthur, supra,* 210 Cal. 439; see also *Estate of McInnis, supra,* 182 Cal.App.3d at pp. 952-956.)

Where the source is community property accumulated during marriage, equal division between the relatives of the decedent and the relatives of the predeceased spouse is "fair and reasonable" under the source rule "since both spouses are deemed to have contributed equally to its acquisition." (*Estate of Rattray, supra,* 13 Cal.2d at p. 713.) ■ Here, by contrast, Jess did not contribute to acquisition of the separate property Frances transmuted to community property during the couple's marriage. Because its source was Frances's separate property, it should be distributed in accordance with section 229, subdivision (b)(5). "[T]he origin of the property and not the closeness of the relationship to the wife" is the test of succession in the particular situation covered by section 229. (*Estate of McArthur, supra,* 210 Cal. at p. 445, italics omitted.)

We are not confronted with the hypothetical posed by Newman's counsel where community funds are used to improve property which has its source as the predeceased spouse's separate property. Such facts merely raise issues of apportionment in the context of the in-law inheritance statute. (See *Estate of Nereson* (1987) 194 Cal.App.3d 865 [239 Cal.Rptr. 865].)

Given our conclusion the property must be distributed under section 229, subdivision (b)(5) regardless of whether it was transmuted into community

property during Frances's lifetime, we need not address the question whether there is sufficient evidence to support the trial court's finding on that issue.

DISPOSITION

The judgment is reversed. Finn is awarded costs on appeal.

Blease, Acting P. J., and Scotland, J., concurred.