Filed 3/10/22  Estate of Ladley CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| Estate of SUSAN RAE LADLEY, Deceased. | C090827 |
| DAWN AKEL, as Personal Representative, etc., Petitioner, v. ROBERT A. LEWIS et al., Claimants and Appellants; MARGARET SANFORD, Claimant and Respondent. | (Super. Ct. No. SP20170021) |

This appeal concerns the distribution of real property from the estate of Susan Rae Ladley (Susan).  Susan died intestate and without issue in 2017.  She was survived by five siblings; appellants Robert A. Lewis, Debra L. Cane, Julia L. Askew, Steven R. Lewis, and Lynette K. McAliney (together, Susan's siblings).

1

Susan was predeceased by her husband of 31 years, Carl Edward Ladley (Carl). Carl had three surviving children from a previous marriage; respondent Margaret Sanford (Sanford), Kelly Marie Gherardi, and Brian Alan Ladley (together, Carl's children).[1]

Carl's children and Susan's siblings asserted competing interests in Susan's estate.[2] Among other things, Carl's children and Susan's siblings each claimed entitlement to real property in South Lake Tahoe (the South Lake Tahoe property). Carl's children and Susan's siblings agreed to have the trial court determine the proper entitlement to and distribution of the South Lake Tahoe property and other assets in Susan's estate based on the papers. Following briefing and evidentiary submissions, the trial court ordered the South Lake Tahoe property distributed to Carl's children pursuant to Probate Code section 6402.5, subdivision (f)(4).[3] Susan's siblings appeal, arguing the trial court misapplied the statute. Susan's siblings also argue the trial court misapplied Family Code section 2581. We disagree and affirm.

## I.  BACKGROUND

Carl purchased the South Lake Tahoe property while single in 1977, taking title in his name alone as an unmarried man. Susan purchased real property in Sparks, Nevada in 1980 (the Sparks property), taking title in her name alone as a single woman.[4]

Susan and Carl married in 1983. Carl maintained title to the South Lake Tahoe property in his name and would continue to do so for the next 17 years.

---

[1]  Another son, Bard Edwin Ladley, predeceased Carl without issue.

[2]  Sanford appears to have acted as a representative for the interests of Carl's children. For ease of reference, we shall refer to Sanford's pleadings and positions as those of "Carl's children."

[3]  Undesignated statutory references are to the Probate Code.

[4]  The Sparks property was sold in July 2015, and the trial court ordered the proceeds of the sale distributed to Susan's siblings.

Carl executed two deeds on March 24, 2000: a quitclaim deed and a joint tenancy deed. The quitclaim deed was recorded on March 28, 2000, and transferred title from Carl to "Carl Edward Ladley and Susan Rae Ladley, husband and wife." The joint tenancy deed was recorded the same day and transferred title from Carl to "Carl Edward Ladley and Susan Rae Ladley, husband and wife, the grantee(s), as joint tenants with rights of survivorship."

On June 25, 2004, Carl executed an interspousal transfer grant deed transferring title to the South Lake Tahoe property from "Carl Edward Ladley, a married man" to "Carl Edward Ladley and Susan Rae Ladley, Husband and Wife." The deed was recorded as document number 2004-0053752-00 on July 2, 2004, at 8:00 a.m. Also, on June 25, 2004, Carl and Susan executed an interspousal transfer grant deed transferring title to the South Lake Tahoe property from "Carl Edward Ladley and Susan Rae Ladley, Husband and Wife" to "Carl Edward Ladley, a married man as his sole and separate property." The deed was recorded as document number 2004-0053753-00 on July 2, 2004, at 8:00 a.m.[5]

Carl died on May 13, 2015, at the age of 86. He was survived by Susan and three children (Carl's children), who were the issue of his previous marriage. Carl's will, executed in 1984, bequeathed his entire estate to Susan. He never changed the will.

Susan died intestate on May 24, 2017, at the age of 65. Susan was survived by Susan's siblings; she had no children of her own.

Dawn Akel was appointed as personal representative of Susan's estate. On May 31, 2018, Akel filed a petition to determine persons entitled to distribution of the property

---

[5] Carl's children presented evidence that the interspousal transfer grant deed recorded as document number 2004-0053752-00 was recorded in error. Susan's siblings, for their part, argued the deeds were erroneously recorded in reverse order. The trial court found that it was unnecessary to decide which deed was currently operative, and Susan's siblings do not appear to challenge that finding.

of Susan's estate pursuant to section 11700. Carl's children and Susan's siblings filed statements of interest pursuant to section 11702 in July and August 2018.

By stipulation of the parties, the trial court determined the proper entitlement to and distribution of assets in Susan's estate based on submitted pleadings, declarations, and requests for judicial notice, rather than live testimony. The trial court determined that Carl's children were entitled to the South Lake Tahoe property, Susan's siblings were entitled to the Sparks property, and the parties were each entitled to a 50 percent interest in other personal property not relevant here. This appeal followed.

## II. DISCUSSION

### A. Timeliness of Appeal

We begin with the argument, advanced by Carl's children, that we should dismiss this appeal as untimely. We conclude the appeal is timely.

California Rules of Court, rule 8.104(a)(1)[6] requires that a party file a notice of appeal on the earliest of the following dates: "(A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a file-endorsed copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a file-endorsed copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days after entry of judgment." (Rule 8.104(a)(1)(A) - (C).)

The trial court filed a proposed statement of decision on July 26, 2019, and the clerk of the court served the proposed statement of decision on July 29, 2019. The proposed statement of decision became final on August 13 or August 14, 2019.[7] (Rule

---

[6] All rule references are to the California Rules of Court.

[7] Carl's children filed a "notice of entry of statement of decision" asserting that the proposed statement of decision became final on August 14, 2019; however, they argue in

4

3.1590(g).)  Carl's children served a "notice of entry of statement of decision" on September 6, 2019.  Susan's siblings filed a notice of appeal on November 4, 2019, indicating they were appealing from an order or judgment entered on August 14, 2019. No minute order or entry of judgment is reflected in the record.

There must be an appealable order or judgment for us to hear an appeal.  (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.)  "The general rule is that a statement or memorandum of decision is not appealable.  [Citations.]  The rule's practical justification is that courts typically embody their final rulings not in statements of decision but in orders or judgments.  Reviewing courts have discretion to treat statements of decision as appealable when they must, as when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits."  (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.)  The trial court's statement of decision resolved all the issues between the parties and appears to have been intended as a final decision on the merits.  No party suggests otherwise.  As such, we exercise our discretion to treat the statement of decision as the appealable, final judgment in this matter.  (*Ibid.*)

Carl's children suggest the time to appeal began on July 29, 2019, when the superior court clerk served the proposed statement of decision.  However, the record does not contain evidence showing the clerk mailed either a "notice of entry" or a file-stamped copy of the judgment to Susan's siblings.  (See *Alan v. American Honda Motor Co., Inc., supra,* 40 Cal.4th at p. 905 [rule 8.104(a)(1) did not apply because court clerk's mailing did not contain either a document entitled "notice of entry" or a file-stamped copy of the judgment].)  The record shows only that the clerk mailed a copy of a *proposed* statement of decision under rule 3.1590, which was subject to objections and nonbinding.  (Rule

_____

their respondents' brief that the proposed statement of decision became final on August 13, 2019.  Susan's siblings, for their part, argue that the statement of decision became effective on August 8, 2019.  We need not concern ourselves with these discrepancies, as they are immaterial to our resolution of the question presented.

5

3.1590(b) ["The tentative decision does not constitute a judgment and is not binding on the court"].) Although we have exercised our discretion to treat the final statement of decision as the judgment (*Alan v. American Honda Motor Co., Inc., supra,* at p. 901), Carl's children do not direct us to any authority that would allow us to treat a *proposed* statement of decision as an appealable, final judgment, and we decline to so. Accordingly, we conclude that rule 8.104(a)(1)'s 60-day appeal period does not apply.

Carl's children next suggest the time to appeal began on August 13 or 14, 2019, when the proposed statement of decision became final. But even assuming the statement of decision became an appealable, final judgment on August 13 or 14, 2019, the notice of appeal would still be timely. Rule 8.104(a)(1)(B) provides that the 60-day appeal period begins with the service of "a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment." Carl's children served a "notice of entry of statement of decision" on September 6, 2019. Assuming without deciding the "notice of entry of statement of decision" was sufficient to trigger the time to appeal, Susan's siblings filed their notice of appeal within 60 days, and thus, the appeal was timely. (Rule 8.104(a)(1)(B).) Accordingly, we have jurisdiction to consider Susan's siblings' appeal.

B.      *Standard of Review*

A judgment is presumed correct on appeal, and "all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) "In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) " 'Statutory interpretation is a question of law that we review de novo.' " (*Jenkins v. Teegarden* (2014) 230 Cal.App.4th 1128, 1138.)

6

*C.      Section 6402.5*

Because she died intestate, Susan's estate was subject to the laws of intestate succession.  (§ 6400 ["Any part of the estate of a decedent not effectively disposed of by will passes to the decedent's heirs" under the laws governing intestate succession]; see also *Estate of Shellenbarger* (2008) 169 Cal.App.4th 894, 898 ["the Legislature has, in essence, written a 'default statutory will' for those who die without a will"].)  Section 6402.5 embodies "California's unique intestate succession scheme under which a significant portion of the decedent's estate may pass to the decedent's in-laws rather than the decedent's blood relatives." (*Estate of Newman* (1994) 25 Cal.App.4th 472, 477 (*Newman*) [construing former section 229, an antecedent to section 6402.5].)  "It is based on the feudal doctrine of descent of ancestral property which distributes the intestate's property according to its origin or source of acquisition."  (*Ibid.*)  "The purpose of the in-law inheritance statutes was to prevent all of the property jointly owned by the spouses from passing to the heirs of one spouse solely because that spouse survived the other." (*Estate of Nereson* (1987) 194 Cal.App.3d 865, 870.)  Instead, the Legislature sought to "effectuate a theory of distribution in which the source of the property's acquisition is controlling." (*Newman, supra,* at p. 486; see also *Estate of Luke* (1987) 194 Cal.App.3d 1006, 1015 [observing "the legislative intent that intestate succession should reflect the decedent's contribution to the estate"].)

Section 6402.5, subdivision (a) provides that, when a decedent has no surviving spouse or issue, and the decedent's predeceased spouse died no more than 15 years before the decedent, real property attributable to the decedent's predeceased spouse passes to the predeceased spouse's surviving issue.[8]  Susan died within 15 years of Carl.

---

[8]  Section 6402.5, subdivision (a) provides in pertinent part:

   "(a)  For purposes of distributing real property under this section if the decedent had a predeceased spouse who died not more than 15 years before the decedent

7

She had no children and does not appear to have remarried following Carl's death. Section 6402.5, subdivision (a) thus provides that Carl's children are entitled to that portion of Susan's estate "attributable to" Carl. (*Ibid.*) The question presented, then, is whether the South Lake Tahoe property was "attributable to" Carl.

To answer this question, we turn again to the words of the statute. Section 6402.5, subdivision (f) provides a four-part definition of the phrase, "the 'portion of the decedent's estate attributable to the decedent's predeceased spouse.' " That definition includes: "Any separate property of the predeceased spouse which came to the decedent by gift, descent, or devise of the predeceased spouse or which vested in the decedent upon the death of the predeceased spouse by right of survivorship." (§ 6402.5, subd. (f)(4).)

The trial court found the South Lake Tahoe property was originally Carl's separate property, and each of the deeds affecting the property appeared to be properly executed and represented a valid transmutation for the purposes of asset characterization. (Fam. Code, § 852, subd. (a); Civ. Code, § 1091.) Susan's siblings do not challenge any of these findings. Instead, they argue the trial court's reliance on section 6402.5, subdivision (f)(4) was misplaced because Susan acquired an interest in the South Lake Tahoe property by way of a transfer for consideration, and not by gift, descent, or devise. We are not persuaded.

Susan's siblings make much of the fact that the form deeds transferring the South Lake Tahoe property from Carl to Carl and Susan recite that they were made "for the

---

and there is no surviving spouse or issue of the decedent, the portion of the decedent's estate attributable to the decedent's predeceased spouse passes as follows:

"(1) If the decedent is survived by issue of the predeceased spouse, to the surviving issue of the predeceased spouse; if they are all of the same degree of kinship to the predeceased spouse they take equally, but if of unequal degree those of more remote degree take in the manner provided in Section 240."

8

consideration of Ten Dollars ($10.00) and other valuable considerations" and "FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged." They accuse the trial court of ignoring the recitals, but the statement of decision shows the court considered them and found them to be nondispositive. The statement of decision observes that such recitals are "standard boilerplate language common in most deeds," and indicates the trial court weighed them against other evidence—namely, the absence of any transfer tax payment or contract of sale—to conclude there was "insufficient evidence to support a transmutation for consideration." We will not second guess the trial court's weighing of the evidence.

Susan's siblings direct our attention to Civil Code sections 1614 and 1615. (Civ. Code, §§ 1614 ["A written instrument is presumptive evidence of a consideration"] and 1615 ["The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it"].) They fault the trial court for ignoring the statutory presumption of consideration and failing to place the burden on Carl's children to rebut the presumption. These arguments fail.

Civil Code section 1614 establishes a rebuttable presumption of consideration. (*Rancho Santa Fe Pharmacy, Inc. v. Seyfert* (1990) 219 Cal.App.3d 875, 884 ["the presumption of consideration under section 1614 affects the burden of producing evidence and not the burden of proof"]; Evid. Code, § 604 ["The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption"].)

Rebuttable presumptions are evidence and as such can be weighed by the trier of fact. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 611-612; *Laird v. T.W. Mather, Inc.* (1958) 51 Cal.2d 210, 221; *Weil v. Weil* (1951) 37 Cal.2d 770, 788.) A disputable

9

presumption may be rebutted by evidentiary facts. It is for the trier of fact to determine whether the proffered evidence outweighs the presumption. (*In re Marriage of Mix, supra,* at pp. 611-612; *Weil v. Weil, supra,* at p. 788; *Olson v. Olson* (1935) 4 Cal.2d 434, 437-438; *In re Marriage of Friedman* (2002) 100 Cal.App.4th 65, 72-73; *McDonald v. Hewlett* (1951) 102 Cal.App.2d 680, 688.) The finding a rebuttable presumption has been overcome will not be reversed on appeal if supported by substantial evidence. (*In re Marriage of Mix, supra,* at pp. 611-612; *Weil v. Weil, supra,* at p. 788; *In re Marriage of Friedman, supra,* at pp. 72-73.)

The trial court's statement of decision indicates the court considered the recitals of consideration in the deeds but found Carl's children rebutted the presumption with evidence that no documentary transfer tax was paid, and no contract of sale made. That determination was supported by substantial evidence, including the deeds themselves. Susan's siblings suggest the trial court misallocated the burden of production by allowing Carl's children to rely on the *absence* of evidence of consideration. But Susan's siblings ignore the deeds, which show on their face that no transfer tax was imposed. The trial court could have found from the deeds alone that Carl's children carried their burden to show that the transfers were not made for consideration. Substantial evidence thus supports the trial court's determination that Carl's children sufficiently rebutted the presumption.

Susan's siblings argue the trial court failed to give due consideration to evidence (in the form of another deed) showing that Susan transferred a joint tenancy interest in the Sparks property to Carl in 1997. They argue the evidence supports an inference of mutual consideration, in that Susan may have transferred an interest in the Sparks property to Carl in exchange for him transferring an interest in the South Lake Tahoe property to her. The statement of decision confirms the trial court considered—and rejected—this argument, finding that, "without explicit evidence of a mutual transfer of interests between the [South Lake Tahoe] Property and the [Sparks] Property, the three-

10

year time difference between transfers does not support a finding of mutual consideration." As before, we decline to second guess the trial court's evaluation of the evidence.

Having concluded that substantial evidence supports the trial court's determination that Carl's children overcame the presumption, we also conclude that substantial evidence supports the court's application of section 6402.5, subdivision (f)(4). As previously discussed, the evidence was undisputed that Carl acquired the South Lake Tahoe property as an unmarried man and held title as his separate property for much of his marriage to Susan. Although Susan held joint tenancy and tenancy in common interests in the South Lake Tahoe property over the years, Carl's children sufficiently rebutted the presumption that she paid consideration for such interests, raising an inference that Susan acquired the property by gift, descent, or devise. (§ 6402.5, subd. (f)(4).) That inference was supported by evidence that Susan transferred her interest in the South Lake Tahoe property back to Carl in 2004, and Carl held title as his separate property until he died in 2015, leaving his entire estate to Susan. From this evidence, which we deem substantial, the trial court could reasonably conclude the South Lake Tahoe property began and ended as Carl's separate property, which Susan ultimately acquired by gift, descent, or devise. (*Ibid.*; see also *Newman, supra,* 25 Cal.App.4th at pp. 486-487 [the source of the property is controlling, regardless of whether the property is transmuted into community property before the death of the predeceased spouse].) Substantial evidence thus supports the application of section 6402.5, subdivision (f)(4).

D.    *Family Code Section 2581*

Susan's siblings also argue the trial court misapplied Family Code section 2581. Any error was manifestly harmless.

Susan's siblings argued in the trial court that the South Lake Tahoe property began as Carl's separate property and was transmuted into separate property interests of Carl and Susan during the course of his marriage to Susan. The statement of decision, in an

11

apparent response to this argument, invokes Family Code section 2581 for the proposition that property held in joint title by a married couple is presumptively community property.  (Fam. Code, § 2581 [property acquired during marriage presumed to be community property for the purpose of division of property on dissolution of marriage or legal separation].)  Susan's siblings observe that Family Code section 2581 applies only "on dissolution of marriage or legal separation of the parties," neither of which applies here.  We do not disagree.  But the trial court's analysis does not depend upon Family Code section 2581 in any outcome determinative sense, and Susan's siblings do not even attempt to explain how they could have been prejudiced by the single reference to an inapt statute.  We therefore reject the claim of error.

## III.  DISPOSITION

The judgment is affirmed.  Respondent is entitled to recover her costs on appeal.  (Rule 8.278(a)(1) & (2).)

/S/

_____

RENNER, J.

We concur:

/S/

_____

MAURO, Acting P. J.

/S/

_____

DUARTE, J.